**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| PIONEERRX, LLC ) | CIVIL ACTION NO.: |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | JUDGE |
| ) | |
| DANWINS, LLC, SPENCERPORT ) | |
| FAMILY APOTHECARY, LLC, AND DRX ) | |
| SOFTWARE, LLC ) | MAGISTRATE JUDGE |
| ) | |
| Defendants ) | |
| ) | |
| ) | **JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff PioneerRx LLC ("PioneerRx" or "Plaintiff") alleges as follows against Danwins, LLC ("Danwins"), Spencerport Family Apothecary, LLC ("Spencerport"), and DRX Software, LLC ("DRX") (collectively, "Defendants"). The allegations herein are made on personal knowledge as to PioneerRx with respect to its own actions, and upon information and belief as to all other matters.

## INTRODUCTION

1.      PioneerRx is a leading provider of cutting-edge software systems that help independent pharmacies manage their workflow, provide better service, and save costs. PioneerRx has invested decades and millions of dollars into research and development in order to provide the market's leading pharmacy software systems and to achieve the highest customer satisfaction across the industry.

2.      PioneerRx provides these software systems and other support services to its customers pursuant to a System Agreement whereby the customers obtain a license to these products in exchange for a monthly fee. The System Agreement also requires customers to keep

strictly confidential PioneerRx's technical and business information that the customers learn through access to the pharmacy software system and service products.  Customers also agree that they will not use the access they have been provided to copy, reverse engineer, or recreate the pharmacy software that PioneerRx has spent decades and tens of millions of dollars to develop.

3.     Defendants Danwins LLC and Spencerport Apothecary are former PioneerRx customers who voluntarily agreed to abide by these terms and, for years thereafter, enjoyed access to PioneerRx's innovations and technical achievements.  These Defendants then engaged in an illicit scheme to violate that agreement, steal PioneerRx's confidential information, and misappropriate PioneerRx's trade secrets for the express purpose of creating and selling a pharmacy software system that is an unauthorized clone of PioneerRx's product features, innovations, and business model.

4.     After accessing PioneerRx's confidential and proprietary information for years, Danwins' owner Daniel Safee created the DRX company.  DRX now markets a competing pharmacy software system and targets existing customers of PioneerRx, causing PioneerRx substantial harm.

5.     DRX and Spencerport, another former PioneerRx customer, conspired to obtain detailed reports about the functioning and architecture of PioneerRx's software systems, in direct violation of Spencerport's agreement with PioneerRx and after being advised explicitly by PioneerRx that a third party competitor would not be allowed such access.

6.     Defendants' bad faith breach of contract and illicit misappropriation and theft of trade secrets and confidential information has left PioneerRx with no choice but to file this lawsuit seeking injunctive relief and recovery of damages for the harm that has been caused by this illegal conduct.

## THE PARTIES

7.      PioneerRx is a Delaware limited liability company with its principal business address located at 408 Kay Lane, Shreveport, Louisiana 71115.

8.      Danwins is a New York limited liability company with its principal business address located at 2186 Empire Blvd., Webster, New York 14580.  Danwins may be served via the Louisiana long-arm statute to its registered agent for service of process, Daniel Safee, 1622 Greensboro Drive, Webster, New York 14580.

9.      Spencerport is a New York limited liability company with its principal business address located at 42 Nichols Street, Suite 11, Spencerport, New York 14559.  Spencerport may be served via the Louisiana long-arm statute at 42 Nichols Street, Suite 11, Spencerport, New York 14559.

10.     DRX is a New York limited liability company with its principal business address at 2186 Empire Blvd., Webster, New York 14580.  DRX may be served via the Louisiana long-arm statute at 2186 Empire Blvd., Webster, New York 14580.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, 2202, and the trade secret laws of the United States, 18 U.S.C. §§ 1836 and 1839.  This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over all of the Defendants.  Personal jurisdiction exists generally over all of the Defendants because they (directly and/or through their subsidiaries, divisions, groups or distributors) have sufficient minimum contacts with the Western District of Louisiana as a result of substantial business conducted within the State of

Louisiana.  For example, Danwins and Spencerport have done business with PioneerRx in the Western District of Louisiana pursuant to contracts between the parties.  Danwins and Spencerport have also consented that jurisdiction for any litigation arising out of those agreements shall be in Shreveport, Louisiana.  Exs. 1, 2 § XVIII.M.; Exs. 3-5 § XIV.L.  Defendants also previously removed a state court action between these same parties to the Western District of Louisiana.  *See* Case No. 5:21-cv-01083-SMH-MLH, Dkt. 1.

13.    Personal jurisdiction also exists specifically over all the Defendants because they have each committed acts of misappropriation in the Western District of Louisiana and/or taken PioneerRx's confidential information from this District.  For example, Danwins and DRX directly and/or through their subsidiaries, divisions, groups, or distributors, advertise, market, use, offer for sale, import for sale and/or sell the products at issue in this case containing the misappropriated technology in the Western District of Louisiana, and place the misappropriated products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in this District.  Further, Defendants' misappropriations involved certain trade secrets that were invented in, stored in, or accessed from this District.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because each Defendant transacts business in this district, has misappropriated trade secrets in this district, and is subject to personal jurisdiction in this district, including pursuant to agreements signed by Danwins and Spencerport.  In addition, venue is proper because PioneerRx is headquartered in this District; has made significant investments of both equipment and engineering talent in this District; stores in or invented in this District certain of the trade secrets at issue in this case; and has suffered harm in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

### A.     PioneerRx Develops Innovative Pharmacy Software System

15.     PioneerRx is an award-winning software company that provides cutting-edge pharmacy management software and support products (PioneerRx's "Software") to help pharmacies improve their healthcare operations.

16.     The PioneerRx Software helps independent pharmacies improve and manage their intake, workflow, and delivery.  The PioneerRx Software also improves the patient customer experience, for example, by providing ways for the customers to communicate with the pharmacy, access their prescription information, and request refills.

17.     Along the way to helping thousands of pharmacies reduce their costs and provide better service, PioneerRx has become the most chosen for installation pharmacy system with the highest customer satisfaction.

18.     PioneerRx's award-winning Software is the result of decades and hundreds of thousands of hours in research and development, costing tens of millions of dollars.  This research and development is done by PioneerRx employees.  PioneerRx owns all the work product that is developed, including the Software.

19.     PioneerRx's research and development has also generated extremely valuable, confidential, and proprietary business and technical information (PioneerRx's "Confidential Information"), including PioneerRx's trade secrets, that is not available to the public.  For example, PioneerRx has developed:

- **Pharmacy Management Software:** a software program that is created from source code, databases, servers, and a user-interface for performing tasks such as managing pharmacy workflow, point of sale operations, and managing patient and prescription information;

- **Workflows for Pharmacy Management:** a customizable series of steps, options, and strategies incorporated into the Software for pharmacies to help

manage their order of operations, level of automation, inventory procedures, and patient and prescription organization, among other things;

- **Data Structures:** computer data architecture that is optimized to store and quickly access data needed for workflows and other pharmacy management, such as patient and prescription information;

- **Database Procedures**: server based code for accessing, manipulating, organizing, and creating data, data structures, creating reports, and assisting computerized workflows; and

- **PioneerRx's manuals, documentation, user guides, testing procedures, and other materials:** text, graphical, and video materials intended to help educate customers on how to operate, customize, and test the PioneerRx Software, data structures, and database procedures.

20.     The forgoing Confidential Information is further described with additional detail in PioneerRx's technical documentation, attached hereto as Appendix A.[1]

21.     PioneerRx's Confidential Information, including trade secrets, contributes to an improved customer experience compared to the pharmacy management software of PioneerRx's competitors.  PioneerRx derives a significant competitive advantage by keeping its Confidential Information, including trade secrets, unknown to the public.  By doing so, PioneerRx is able to provide features, functionality, and performance for its Software that its competitors do not have, thus making the PioneerRx Software more attractive to customers.

**B.    PioneerRx Protects Its Confidential Information**

22.     Due to the valuable nature of the Confidential Information, PioneerRx goes to great lengths to protect it from public disclosure.  Among these efforts includes having its employees who have access to the Confidential Information sign confidentiality agreements.  PioneerRx has also restricted physical and digital access to authorized users with valid

---

[1]     Due to the confidential information contained in Appendix A and Appendix B that PioneerRx considers trade secrets, a Motion to Seal these appendices is being filed contemporaneously herewith.

credentials.  Access is also strictly limited to legitimate business purposes, and only those users who need access to Pioneer's Confidential Information are given access.

23.    Other measures PioneerRx has taken to protect its Confidential Information include, but are not limited to computer and server passwords, security access cards, confidentiality agreements, letters notifying departing employees to return all property belonging to PioneerRx, distribution of information on a need-to-know basis, and non-compete and non-solicitation agreements with its high-level employees.

24.    To the extent that it is necessary to disclose Confidential Information to customers for legitimate business purposes, PioneerRx has entered into System Agreements that include confidentiality provisions to protect disclosure of such information to the public, as further explained below.

25.    Two such customers that entered into System Agreements were Danwins and Spencerport.  In connection with System Agreements, Defendants gained access to PioneerRx's Confidential Information.  Defendants then abused their access, exceeded the scope of permissible access, and then engaged in an illicit scheme to steal the Confidential Information and use it for improper purposes.

**C.    <u>PioneerRx Enters into System Agreements with Danwins and Spencerport</u>**

26.    PioneerRx is the sole owner of its Confidential Information, including its Software.  Pursuant to agreements with various customers, PioneerRx grants customers a license to use the Software for limited purposes.  *See* Exs. 1 - 5.

27.    PioneerRx entered into a System Agreement with Danwins on April 7, 2014.  *See* Ex. 1.  The agreement with Danwins was renewed as of June 8, 2018.  *See* Ex. 3.

28.    PioneerRx entered into a System Agreement with Spencerport on September 10, 2014.  See Ex. 2.  This agreement was renewed as of October 24, 2018 and again as of October 31, 2019.  *See* Exs. 4, 5.

29.    These System Agreements (Exs. 1-5) are valid and enforceable contracts. PioneerRx has complied with all of its obligations under these contracts.

30.    All of the System Agreements with Danwins and Spencerport contain numerous confidentiality provisions and restrictions that limited the actions of customers who gained access to PioneerRx's Confidential Information and Software.  For example, both Danwins and Spencerport agreed to following provisions of their respective original System Agreements:

- "The CUSTOMER shall not sell, assign, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose, copy (except for the purposes as are set forth in Section III above) or otherwise make available to any person or entity, the SOFTWARE, or any physical embodiment thereof."  Exs. 1-2 § V. ("Title to Vendor-Created Software and Confidentiality").

- "Further, the CUSTOMER shall not copy, duplicate or recreate, or permit any other person or entity to copy, duplicate or re-create, any physical embodiment of the SOFTWARE without the consent of the VENDOR." *Id.*

- "The CUSTOMER shall not knowingly provide access of the SOFTWARE to any person or entity who is employed by or has a contractual relationship with any competitor of VENDOR."  *Id.*

- "The CUSTOMER agrees to take all reasonable precautions to secure and protect all SOFTWARE in a manner consistent with the VENDOR's rights as herein stated and to take such reasonable action as is necessary to satisfy the VENDOR that said SOFTWARE is protected."  *Id.*

- "All material and information provided by one party to the other relating to the business, policies, procedures, customs and forms of that party or any of its affiliates, including information previously divulged or delivered relating to the aforementioned subject matter is hereby designated as and considered to be Proprietary Information."  *Id.*

- "Each party shall maintain the confidentiality of the other's Proprietary Information and will not disclose such Proprietary Information without the prior written consent of the other party. In addition, neither party shall use the other party's Proprietary Information except as contemplated herein."  *Id.*

31.     Both the Danwins and Spencerport renewed System Agreements contain similar provisions that required Danwins and Spencerport to keep what they obtained from PioneerRx confidential and limited their actions:

- "The Customer shall not, nor shall it permit others to, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose, copy or otherwise make available to any third person or entity, the Software or any physical embodiment thereof." Ex. 3 § I.C.; *see also* Exs, 4-5 § I.C.

- "The Customer shall not, and shall not permit any other person or entity to copy, duplicate, recreate, or reverse engineer any embodiment of the Software without the consent of the Vendor." Ex. 3 § III.A.; *see also* Exs. 4-5 § III.A.

- "The Customer shall limit the persons who have access to the Software to those persons who use said Software for the normal business operations of the Customer. **THE CUSTOMER SHALL NOT KNOWINGLY PROVIDE ACCESS TO THE SOFTWARE TO ANY PERSON OR ENTITY WHO IS EMPLOYED BY OR HAS A CONTRACTUAL RELATIONSHIP WITH ANY COMPETITOR OF VENDOR.**" Exs. 3-5 § III.A.

- "All material and information provided by one party to the other relating to the business, technology, policies, procedures, customers and forms of that party or any of its affiliates, including information previously divulged or delivered relating to the aforementioned subject matter is hereby designated as and considered to be Proprietary Information." *Id.* § III.C.

- "Each party shall maintain the confidentiality of the other's Proprietary Information and will not disclose such Proprietary Information without the prior written consent of the other party. In addition, neither party shall use the other party's Proprietary Information except as contemplated herein." *Id.*

32.     The above contractual provisions were knowingly and consciously entered into by Danwins and Spencerport. Daniel Safee signed each of the System Agreements on behalf of Danwins. On information and belief, Mr. Safee is the owner and founder of both Danwins and DRX. Eric Schladebeck signed each of the System Agreements on behalf of Spencerport. On information and belief, Mr. Schladebeck is the owner of Spencerport.

**D.     Defendants Engage in Illicit Scheme to Steal PioneerRx's Confidential Information and Violate Contractual Agreements**

33.     On information and belief, Defendants engaged in an illicit scheme to steal PioneerRx's Confidential Information, including trade secrets and other business information.

This scheme included cooperation between members of Danwins, DRX, and Spencerport to improperly obtain and use such information for the purposes of creating, marketing, and using a competing pharmacy software system.

34.    On information and belief, for years, Dan Safee (the owner of Danwins and founder of DRX) accessed Confidential Information that PioneerRx provided to its customers and studied PioneerRx's software for purposes of copying, reverse engineering, and/or recreating it.

35.    Mr. Safee continually accessed PioneerRx's Software and databases for improper purposes, including to discern confidential details regarding the operation, methodology, strategies, and data structures underlying the PioneerRx Software.  Mr. Safee needed to continually access the PioneerRx Software in order to understand information that would help him create a competing pharmacy software system and because this information is not immediately discernable without studying and/or continually using PioneerRx's Software. Indeed, Mr. Safee used the PioneerRx Confidential Information as a reference tool for purposes of his DRX software development, even after he ceased to be a customer of PioneerRx.

36.    Mr. Safee also contacted PioneerRx customer support multiple times after he decided to initiate this scheme in order to obtain more details about the workings of PioneerRx Software that he could not immediately discern.  For example, PioneerRx offers a "Click to Call" feature, whereby a pharmacist can use PioneerRx software to click on an icon next to a customer's name and initiate a phone call with that customer.  In April 2017, Mr. Safee was having technical problems with trying to create his own URL to send outbound calls.  Mr. Safee asked PioneerRx about technical details regarding how this feature works so that he could incorporate these learnings into DRX's own software.

37.     In December 2019, Mr. Safee called PioneerRx customer support and indicated that he was switching software providers.  Mr. Safee also indicated that he wanted to access the PioneerRx data server so that he could download his pharmacy data.  By accessing the PioneerRx data server, Mr. Safee intended to obtain details about the PioneerRx's software, including its internal architecture and inner workings so that he could duplicate it with his own software.

38.     At or around that time, Mr. Safee also refused to pay bills for PioneerRx's services that were due for November 23, 2019 through January 23, 2020.  To date, these past due bills have not been paid.

39.     On information and belief, Mr. Safee, the owner of Danwins, incorporated DRX in September of 2020.

40.     On or about September 13, 2020, in violation of its System Agreement, Spencerport owner Eric Schladebeck provided access to PioneerRx's Confidential Information by creating a log-in for Daniel Safee (of Danwins and DRX) to access the PioneerRx's system at Spencerport's pharmacy.  Mr. Safee was then able to use PioneerRx's Software as a reference to understand and/or confirm details about PioneerRx software, including regarding new features that had been released.

41.     Using that log-in from a Spencerport machine, Mr. Safee then impermissibly generated reports from PioneerRx's software systems that included information such as patient, prescriber, and prescription information and details about PioneerRx's databases.  Mr. Safee also contacted PioneerRx to request data access of behalf of Spencerport.

42.     Throughout the following week in September 2020, Mr. Schladebeck used his login to access PioneerRx's customer interface from a Spencerport machine in order to generate reports containing patient and prescription information, as well as details about PioneerRx's databases.

43.     On information and belief, Mr. Safee generated these reports in order to understand and/or confirm details about the PioneerRx Software, including its underlying architecture and functionality.

44.     On or about September 24 and September 28, 2020, PioneerRx customer support contacted Mr. Schladebeck at his Spencerport store because PioneerRx had been told by a third-party that Spencerport was discontinuing its customer relationship with PioneerRx.  In response, Mr. Schladebeck stated that Spencerport was switching to a company named DRX because DRX's software is less expensive than PioneerRx's.

45.     On or about September 28, 2020, PioneerRx's customer support asked Mr. Schladebeck if he knew the owner of DRX (Daniel Safee) personally and whether that was a reason for his switch to DRX.  Mr. Schladebeck denied knowing Mr. Safee, despite having created a login for him to impermissibly access PioneerRx's system, in direct breach of Spencerport's System Agreement with PioneerRx, and despite Mr. Safee having requested access to PioneerRx's systems on behalf of Spencerport.

46.     On or about October 13, 2020, PioneerRx customer support once again spoke to Mr. Schladebeck.  He informed PioneerRx that DRX was able to migrate Spencerport's data to a DRX system without PioneerRx's assistance or that of a PioneerRx approved vendor.  But Spencerport did not immediately cease its customer relationship with PioneerRx.

E.     **DRX Used PioneerRx's Confidential Information to Create Competing Pharmacy Software**

47.     DRX used the Confidential Information, including trade secrets, it had improperly obtained from Danwins and Spencerport to create its competing pharmacy software.

48.     Additionally, DRX used its access to PioneerRx Software to study, copy, reverse engineer, and/or recreate that Software in direct violation of the System Agreement with PioneerRx.

49.     DRX's website (https://drxpharmacytech.com/) contains indicia that DRX used, incorporated, and copied PioneerRx's trade secrets into its own software, including by copying details regarding the implementation of features it discerned by continually accessing the PioneerRx software and databases for improper purposes.

50.     For example, DRX advertises that is able to offer comparable features at less than half the price of its competition.



51.     DRX's advertising of other features also provides an indicator that it has utilized PioneerRx's Confidential Information, including trade secrets, to provide competing features. These include the advertising of a "Notifications" bar, search functionality, click-to-call functionality, status warnings, and color-coding that closely resemble aspects of PioneerRx's Software, as shown in the comparison attached hereto as Appendix B.

52.    By using and/or incorporating PioneerRx's Confidential Information and trade secrets into its own software, DRX obtained a commercial advantage in competing against PioneerRx.

53.    On information and belief, DRX has solicited and continues to solicit customers of PioneerRx to switch to its own DRX software.

## COUNT I

### Trade Secret Misappropriation Under the Defend Trade Secrets Act
### (18 U.S.C. §§ 1836(b), 1839 *et seq.*) (against all Defendants)

54.    PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

55.    PioneerRx is the owner of certain valuable trade secrets contained in and relating to the Software, including as described herein.  These trade secrets are confidential and propriety information, including financial, business, and technical information, such as compilations, program devices, methods, techniques, processes, procedures, programs, and codes, which constitute trade secrets.  These trade secrets are related to PioneerRx's products and services that are used in or intended for use in interstate and foreign commerce.  As stated above, PioneerRx sells its products throughout the United States.  For example, PioneerRx's pharmacy software system and solutions are sold and used throughout the United States.

56.    These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on PioneerRx.  They derive independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to PioneerRx, crucial to the operation of PioneerRx's business, and if available to others, would enable them to compete with PioneerRx to PioneerRx's detriment.

57. PioneerRx has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to PioneerRx's trade secrets. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

58. Danwins and Spencerport gained access to PioneerRx's trade secrets during the course of System Agreements PioneerRx entered into with them.

59. Danwins and Spencerport subsequently used and disclosed PioneerRx's trade secrets to DRX. Accordingly, Defendants are in possession of the foregoing PioneerRx trade secrets, which are subject to confidentiality agreements in which Danwins and Spencerport expressly acknowledged and confirmed the confidential nature of these secrets.

60. Defendants improperly acquired PioneerRx's trade secrets and have since improperly used and disclosed those PioneerRx trade secrets, including by incorporating them into products Danwins and DRX markets and sells as their own.

61. Defendants have misappropriated PioneerRx's trade secrets by acquiring, using, and/or disclosing the information described above, including by manufacturing, marketing, offering, and/or selling in the United States products that comprise, embody, and/or incorporate the trade secrets described herein.

62. At the time Defendants acquired and used PioneerRx's trade secrets, Defendants knew or had reason to know that the trade secrets were derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

63. Defendants willfully and maliciously misappropriated PioneerRx's trade secrets in order to gain economic value from that information.

64.    As a direct and proximate result of Defendants' current and continued misappropriation of PioneerRx's trade secrets, PioneerRx will suffer imminent and irreparable harm.

65.    Unless enjoined by this Court, Defendants' acts of misappropriation will continue and PioneerRx will continue to suffer irreparable harm.

66.    PioneerRx has no adequate remedy at law.

## COUNT II

**Trade Secret Misappropriation Under Louisiana Uniform Trade Secret Act**

**(LA Rev Stat § 51:1431 *et seq.*) (against all Defendants)**

67.    PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

68.    PioneerRx is the owner of certain valuable trade secrets contained in and relating to the Software, including as described herein.  These trade secrets are confidential and propriety information, including financial, business, and technical information, such as compilations, program devices, methods, techniques, processes, procedures, programs, and codes, which constitute trade secrets.  These trade secrets are related to PioneerRx's products and services that are used in or intended for use in interstate and foreign commerce.  As stated above, PioneerRx sells its products throughout the United States.  For example, PioneerRx's pharmacy software system and solutions are sold and used throughout the United States.

69.    These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on PioneerRx.  They derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by others because such information is extremely valuable to PioneerRx, crucial to the

operation of PioneerRx's business, and if available to others, would enable them to compete with PioneerRx to PioneerRx's detriment.

70.    PioneerRx has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to PioneerRx's trade secrets.  Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

71.    Danwins and Spencerport gained access to PioneerRx's trade secrets during the course of System Agreements PioneerRx entered into with them.

72.    Danwins and Spencerport subsequently used and disclosed PioneerRx's trade secrets to DRX.  Accordingly, Defendants are in possession of the foregoing PioneerRx trade secrets, which are subject to confidentiality agreements in which Danwins and Spencerport expressly acknowledged and confirmed the confidential nature of these secrets.

73.    Defendants improperly acquired PioneerRx's trade secrets and have since improperly used and disclosed those PioneerRx trade secrets, including by incorporating them into products Danwins and DRX markets and sells as their own.

74.    Defendants have misappropriated PioneerRx's trade secrets by acquiring, using, and/or disclosing the information described above, including by manufacturing, marketing, offering, and/or selling in the United States products that comprise, embody, and/or incorporate the trade secrets described herein.

75.    At the time Defendants acquired and used PioneerRx's trade secrets, Defendants knew or had reason to know that the trade secrets were derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

76.     Defendants willfully and maliciously misappropriated PioneerRx's trade secrets in order to gain economic value from that information.

77.     As a direct and proximate result of Defendants' current and continued misappropriation of PioneerRx's trade secrets, PioneerRx will suffer imminent and irreparable harm.

78.     Unless enjoined by this Court, Defendants' acts of misappropriation will continue and PioneerRx will continue to suffer irreparable harm.

79.     PioneerRx has no adequate remedy at law.

## COUNT III

### Bad Faith Breach of Contract (against Danwins)

80.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

81.     The actions of Danwins, as set forth herein, constitute a breach of contract.

82.     PioneerRx satisfied all relevant obligations under the System Agreements it entered into with Danwins.

83.     Nonetheless, Danwins breached multiple provisions of the System Agreements, including Section V of Exhibit 1 and Sections I.C., III.A., and III.C. of Exhibit 3.

84.     For example, pursuant to the System Agreements, Danwins had an obligation not to, and not to permit any other person to, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose, copy or otherwise make available to any third person or entity, the Software or any physical embodiment thereof.  *See* Ex. 3 § I.C.; *see also* Ex. 1 § V.  By creating a competing pharmacy software, Danwins directly breached Section V of Exhibit 1 and Section I.C of Exhibit 3.

85. Further, Danwins had an obligation to limit the persons who had access to the Software to those who use said Software for its normal business operations. *See* Ex. 3 § III.A.

86. Danwins also had an obligation not to knowingly provide access to the Software to any person or entity who is employed by or has a contractual relationship with any competitor of PioneerRx. *See* Ex. 3 § III.A.; *see also* Ex. 1 § V.

87. Danwins also had an obligation to maintain the proprietary and confidential nature of such information it learned as a result of the System Agreement. *See* Ex. 3 § III.C.; *see also* Ex. 1 § V.

88. None of the exceptions enumerated in Section III.C apply that would release Danwins from this obligation.

89. When Danwins entered the System Agreement with PioneerRx in in 2014 and again in 2018, Danwins intended to fail to perform its obligations as required by the System Agreement. Specifically, Danwins permitted persons access to the Software and/or Confidential Information for purposes other than its normal business operations. The purpose behind Danwins granting access to these persons was so that the Software could be copied, reverse engineered, and/or recreated.

90. After copying, reverse engineering, and/or recreating the Software, DRX was formed to market pharmacy management software to customers of PioneerRx, among others.

91. Pursuant to article 1997 of the Louisiana Civil Code, an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of Danwins' failure to perform.

92. As a result of Danwins' failure to perform under the System Agreement, PioneerRx has been required to obtain counsel to bring this litigation and is entitled to its reasonable attorneys' fees and costs incurred as a result. *See* Ex. 3 § XVIII.K.

93.     PioneerRx has lost revenues and customers to DRX as a result of Danwins' failure to perform its obligations under the System Agreement and suffered damages as a result.

94.     As a result of Danwins' breach, PioneerRx has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs in an amount to be proven at trial.

95.     As a direct and proximate result of Danwins' wrongful conduct, PioneerRx has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Danwins will cause further irreparable injury to PioneerRx.

96.     PioneerRx is entitled to injunctive relief enjoining Danwins, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of PioneerRx's Software and Confidential Information.

## COUNT IV

### Breach of Contract (against Danwins)

97.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

98.     The System Agreement stated that Danwins was to pay PioneerRx $465.00 a month for the Software license, maintenance, and support and rental of PioneerRx's hardware. See Ex. 3 § X.A.

99.     Danwins failed to pay the monthly fees from November 23, 2019 through January 23, 2020.

100.    PioneerRx satisfied all of its obligations under the System Agreement.

101.    As a result of Danwins failure to pay the required monthly amounts under the System Agreement, PioneerRx has suffered damages in the amount of $4,187.56.

102.     Further, as a result of Danwins failure to perform under the System Agreement, PioneerRx has been required to obtain counsel to bring this litigation and is entitled to its reasonable attorneys' fees and costs incurred as a result.  *See* Ex. 3 § XIV.J.

## COUNT V

### Bad Faith Breach of Contract (against Spencerport)

103.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

104.     The actions of Spencerport, as set forth herein, constitute breach of contract.

105.     PioneerRx satisfied all relevant obligations under the System Agreements it entered into with Spencerport.

106.     Nonetheless, Spencerport breached multiple provisions of the System Agreements, including Sections I.C., III.A., and III.C. of Exhibits 4 to 5.

107.     By assisting the creation of a competing pharmacy software, Spencerport directly breached Section I.C of Exhibits 4 and 5.

108.     Spencerport had an obligation to limit the persons who had access to the Software to those who use said Software for its normal business operations. *See* Exs. 4, 5 § III.A.

109.     Spencerport also had an obligation not to knowingly provide access to the Software to any person or entity who is employed by or has a contractual relationship with any competitor of PioneerRx.  *See* Ex. 4, 5 § III.A.

110.     Spencerport also had an obligation to maintain the proprietary and confidential nature of such information it learned as a result of the System Agreement.  *See* Ex. 4, 5 § III.C.

111.     Subsequent to entry into the renewal System Agreement with PioneerRx in 2018, Spencerport allowed representatives of Danwins and/or DRX to access the Software interactively.

112.    This action of Spencerport was contrary to its obligations under the System Agreement and permitted Danwins or DRX to continue copying, reverse engineering, and/or recreating the Software to compete with PioneerRx, including through using PioneerRx's Confidential Information.

113.    PioneerRx has lost revenues and customers to DRX as a result of Spencerport's failure to perform its obligations under the System Agreement and suffered damages as a result.

114.    Spencerport also had an obligation to maintain the proprietary and confidential nature of such information it learned as a result of the System Agreement.  *See* Ex. 4, 5 § III.C.

115.    None of the exceptions enumerated in Section III.C apply that would release Spencerport from this obligation.

116.    Pursuant to article 1997 of the Louisiana Civil Code, an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of Spencerport's failure to perform.

117.    As a result of Spencerport's failure to perform under the System Agreement, PioneerRx has been required to obtain counsel to bring this litigation and is entitled to its reasonable attorneys' fees and costs incurred as a result.  *See* Ex. 4, 5 § XVIII.K.

118.    PioneerRx has lost revenues and customers to DRX as a result of Spencerport's failure to perform its obligations under the System Agreement and suffered damages as a result.

119.    As a result of Spencerport's breach, PioneerRx has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs in an amount to be proven at trial.

120.    As a direct and proximate result of Spencerport's wrongful conduct, PioneerRx has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Spencerport's will cause further irreparable injury to PioneerRx.

121.    PioneerRx is entitled to injunctive relief enjoining Spencerport, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of PioneerRx's Software and Confidential Information.

## COUNT VI

**Violation of Louisiana Unfair Trade Practices and Consumer Protection Law
(LA Rev State § 51:1401, 1405 *et seq.*) (against all Defendants)**

122.    PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

123.    Danwins and DRX engaged in deception in order to gain access to PioneerRx's servers for improper and unfair purposes, including to create a copied version of PioneerRx's software.

124.    PioneerRx was the sole owner of the Software and Confidential Information which was its propriety information.  *See* Ex. 3 §§ I, II, III.

125.    The confidential and proprietary nature of the Software was clearly designated in the System Agreements.  *See* Ex. 3 §§ I and II.

126.    Danwins was granted a license to use the Software pursuant to the System Agreement.  *See* Ex. 3 § I.

127.    The System Agreements expressly limited the use and disclosure of the Software by Danwins.  *See* Ex. 3 §§ I.C. and III.A.

128.    Danwins entered into the System Agreement 2018 renewal with the intent to violate these provisions of the System Agreements and reverse engineer the Software in an effort to acquire its own pharmacy management software to market through DRX.

129.    Such action of reverse engineering the proprietary Software of PioneerRx in violation of the System Agreement in order to then compete with PioneerRx constitutes an unfair method of competition and unfair or deceptive trade act or practice.

130.    Danwins and DRX also engaged in a scheme with Spencerport to use Spencerport's machines to access PioneerRx's Software and/or servers for improper purposes. Danwins and DRX knew that PioneerRx would not grant them access to PioneerRx's Software and/or servers for the purposes of reverse engineering, recreating, or copying any aspect of PioneerRx's Software or Confidential Information.

131.    Danwins and DRX accessed PioneerRx's Confidential Information using Spencerport machines despite knowing it would violate the System Agreements Danwins and Spencerport had entered into with PioneerRx.

132.    Furthermore, before ending its customer relationship with PioneerRx, Spencerport represented to PioneerRx that it was not sure if it was switching software providers in order to prolong the period of access that it could have in order to complete its scheme to help obtain PioneerRx's Confidential Information on behalf of Danwins and DRX.

133.    As a direct result of this scheme, DRX launched a competing pharmacy software system.

134.    PioneerRx has lost revenues and customers due to Danwins' and DRX's unfair methods of competition and unfair or deceptive trade acts or practices and thus, suffered damages as a result.

135.    PioneerRx is entitled to an award of reasonable attorneys' fees and costs due to Danwins' and DRX's violations of the Louisiana Unfair Trade Practices Act. *See* La. R.S. 51:1409(A).

## **JURY DEMAND**

PioneerRx requests trial by jury as to all claims triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, PioneerRx respectfully requests that the Court:

1.      Enter judgment in favor of PioneerRx and against Defendants with respect to each of the Counts above.

2.      Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendants from using or possessing PioneerRx's trade secrets.

3.      Award a temporary restraining order, preliminary injunction, and/or a permanent injunction restraining and enjoining Defendants from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

4.      Declare valid and enforceable the provisions of the PioneerRx's agreements with Danwins and Spencerport.

5.      Declare that Defendants have no rights or privileges to use PioneerRx's Confidential Information or trade secrets.

6.      Award PioneerRx restitution in an amount to be determined at trial.

7.      Award PioneerRx compensatory damages in an amount to be determined at trial, including without limitation, PioneerRx's lost revenues and profits, the loss of value to PioneerRx's information, unjust enrichment, and disgorgement of profits.

8.      Award PioneerRx exemplary or punitive damages in an amount to be determined at trial.

9.      Award PioneerRx attorneys' fees and costs.

10.     Award PioneerRx any such other relief as the Court deems appropriate.

Dated: June 18, 2021

By: */s/ Scott L. Zimmer*
Scott L. Zimmer (La. Bar No. 26151)
KEAN MILLER LLP
333 Texas Street Suite 450
Shreveport, LA 71101
Tel: (318) 562-2700
Fax: (318) 562-2751
scott.zimmer@keanmiller.com

James R. Chastain, Jr. (La. Bar No. 19518)
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
Tel: (225) 387-0999
Fax: (225) 388-9133
sonny.chastain@keanmiller.com

Megan L. Reinkemeyer (La. Bar No. 32548)
KEAN MILLER LLP
711 Louisiana Street, Suite 1800
Houston, TX 77002
Tel: (713) 844-3000
Fax: (713) 844-3030
megan.reinkemeyer@keanmiller.com

Michael W. De Vries *(pro hac vice forthcoming)*
KIRKLAND & ELLIS LLP
555 S. Flower St.
Los Angeles, CA 90071
Tel: (213) 680-8400
Fax: (213) 680-8500
michael.devries@kirkland.com

Adam R. Alper *(pro hac vice forthcoming)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400
Fax: (415) 439-1500
aalper@kirkland.com

Gianni Cutri *(pro hac vice forthcoming)*
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
gianni.cutri@kirkland.com

***ATTORNEYS FOR PIONEERRX, LLC***