# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| PIONEERRX, LLC. | ) | CIVIL ACTION NO.: 5:21-cv-01738 |
| | ) | |
| Plaintiff | ) | |
| | ) | CHIEF JUDGE S. MAURICE HICKS, JR. |
| v. | ) | |
| | ) | |
| DANWINS, LLC, SPENCERPORT | ) | MAGISTRATE JUDGE MARK L. |
| FAMILY APOTHECARY, LLC, AND DRX | ) | HORNSBY |
| SOFTWARE, LLC | ) | |
| | ) | |
| Defendants | ) | JURY TRIAL DEMAND |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF PIONEERRX'S OPPOSITION BRIEF TO DEFENDANT DANWINS, LLC'S, DEFENDANT DRX SOFTWARE, LLC'S, AND DEFENDANT SPENCERPORT FAMILY APOTHECARY, LLC'S <u>SECOND MOTIONS TO COMPEL</u>

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 3

      A.    Defendants Failed to Participate in Discovery Prior to Filing This Motion ........ 3

      B.    Without Meeting and Conferring, Defendants Launched a Series of Discovery Motions, Motions to Stay, and Motions for Summary Judgment in June 2023 ... 6

      C.    Defendants Terminated Their June 2023 Motions to Compel ............................ 7

      D.    Defendants Refused To Respond To PioneerRx's Multiple Requests To Meet And Confer On Any Remaining Issues ............................................................. 8

      E.    PioneerRx Again Supplemented Its Responses to Defendants' Interrogatory Nos. 1 and 2 on August 22, 2023 .................................................................... 9

      F.    Rather Than Engage with PioneerRx's Multiple Attempts to Meet and Confer, Defendants Filed New Motions To Compel Largely Raising The Same Arguments And Largely Ignoring The Content Of PioneerRx's Supplemental Responses ...................................................................................................... 10

III.  ARGUMENT ...................................................................................................... 11

      A.    PioneerRx's Objections Are Proper ............................................................... 12

      B.    PioneerRx Sufficiently Responded to Defendants' Interrogatory Nos. 1 and 2    15

            1.    PioneerRx Is Not Required to State That Its Trade Secrets Are Not Trade Secrets ......................................................................................... 16

            2.    PioneerRx Has Sufficiently Described Its Trade Secrets ............. 18

            3.    PioneerRx's Trade Secrets Are Not Generally Known ................. 26

      C.    PioneerRx's Trade Secrets Are Appropriately Designated as "OUTSIDE COUNSEL EYES ONLY" ............................................................................... 27

      D.    PioneerRx May Assert All of Its Trade Secrets ............................................. 28

      E.    PioneerRx Has Sufficiently Responded to Defendants' Other Interrogatories .. 30

            1.    Defendants' Criticisms Regarding "Individuals with the Most Knowledge" Are Unfounded ......................................................... 30

            2.    Defendants' Criticisms Regarding Objections Are Unfounded .... 31

            3.    PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Individuals Who Provided Assistance in Responding ................................................................................... 31

4.    PioneerRx Has Sufficiently Responded to Defendants'
Interrogatories Regarding Documents Supporting Its Responses to
Interrogatory Nos. 1 and 2 ............................................................... 32

5.    PioneerRx Has Sufficiently Responded to Defendants'
Interrogatories Regarding Confidential Information Accessed and
Stolen by Defendants ..................................................................... 34

6.    PioneerRx Has Sufficiently Responded to Defendants'
Interrogatories Regarding Breaches of the Systems Agreement ... 41

7.    PioneerRx Has Sufficiently Responded to Defendants'
Interrogatories Regarding Improper Access of PioneerRx's
Software ........................................................................................ 42

8.    PioneerRx Has Sufficiently Responded to DRX's Remaining
Interrogatories ............................................................................... 46

F.    PioneerRx Has Sufficiently Responded to Defendants' Requests for Production
............................................................................................................... 49

G.    Defendants' Motions Should Be Denied Because They Failed to Meet and
Confer or Raise These Issues With PioneerRx Prior to Filing Their Motions ... 50

IV.    CONCLUSION ........................................................................................... 51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   399 F. Supp. 2d 1064 (N.D. Cal. 2005).................................................................34

*ABC Acquisition Co., LLC v. AIP Prods. Corp.*,
   No. 18 CV 8420, 2020 WL 4607247 (N.D. Ill. Aug. 11, 2020) .........................17

*Act II Jewelry, LLC v. Wooten*,
   318 F. Supp. 3d 1073 (N.D. Ill. 2018)................................................................19

*Am. Biocarbon, LLC v. Keating*,
   No. 20-00259-BAJ, 2020 WL 7264459 (M.D. La. Dec. 10, 2020) ....................24

*Am. Registry, LLC v. Hanaw*,
   No. 2:13-CV-352, 2013 WL 6332971 (M.D. Fla. Dec. 5, 2013)........................24

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
   No. 5:15-CV-01370, 2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) ....................34

*Brown & Root Indus. Servs., LLC v. Brown*,
   No. CV 21-291, 2022 WL 4492087 (M.D. La. Sept. 9, 2022) ...........................18

*Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*,
   175 F.R.D. 646 (C.D. Cal. 1997) ........................................................................34

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.*,
   No. 01-CV-01644-REB-CBS, 2010 WL 502721 (D. Colo. Feb. 8, 2010) .........14

*Cent. Oil & Supply Corp. v. Carter*,
   No. 3:21-CV-03285, 2022 WL 5061313 (W.D. La. Aug. 4, 2022) ....................13

*Comet Techs. USA Inc. v. XP Power LLC*,
   No. 20-CV-06408, 2022 WL 2442810 (N.D. Cal. Mar. 2, 2022)........................34

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007) .........................................................................24

*EMC Corp. v. OrangePoint, LLC*,
   No. 11-2643, 2012 WL 13019524 (D. Kan. July 31, 2012)................................29

*Hall v. Louisiana*,
   No. 12-657, 2014 WL 2560579 (M.D. La. June 6, 2014).....................................13

*Hsieh v. Apache Deepwater, LLC*,
   No. CV 19-00408, 2021 WL 3502467 (M.D. La. Aug. 9, 2021).........................13

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    165 F. Supp. 2d 812 (W.D. Wis. 2001) ........................................................................ 22, 25

*IDX Sys. Corp. v. Epic Sys. Corp.*,
    285 F.3d 581 (7th Cir. 2002) ........................................................................ 17

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ........................................................................ 25

*Johnston v. Transocean Offshore Deepwater Drilling, Inc.*,
    No. CV 18-491, 2019 WL 1558040 (E.D. La. Apr. 10, 2019) ........................................... 13

*Kalencom Corp. v. Shulman*,
    No. CV 17-5453, 2018 WL 1806037 (E.D. La. Apr. 17, 2018) ........................................... 24

*LivePerson, Inc. v. [24]7.ai, Inc.*,
    No. 17-CV-01268, 2019 WL 3254226 (N.D. Cal. July 19, 2019) ....................................... 34

*Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*,
    No. CV 19-12948, 2021 WL 1940801 (E.D. La. May 14, 2021) ........................................ 14

*Microvention, Inc. v. Balt USA, LLC*,
    No. 820-CV-02400 JLS, 2021 WL 4840786 (C.D. Cal. Sept. 8, 2021) .............................. 24

*Motorola, Inc. v. Lemko Corp.*,
    No. 08-C-5427, 2012 WL 74319 (N.D. Ill. Jan. 10, 2012) ........................................... 19, 29

*Peerless Indus., Inc. v. Crimson AV LLC*,
    No. 11 C 1768, 2015 WL 1275908 (N.D. Ill. Mar. 17, 2015) ........................................... 19

*Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*,
    No. 3:16-CV-00024-CHB, 2021 WL 1062553 (W.D. Ky. Mar. 19, 2021) ......................... 23

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
    No. C 13-03644 SI, 2014 WL 2527148 (N.D. Cal. June 4, 2014) ..................................... 22

*qad. inc. v. ALN Assocs., Inc.*,
    No. 88 C 2246, 1990 WL 93362 (N.D. Ill. June 20, 1990) ............................................... 25

*RealD Spark LLC v. Microsoft Corp.*,
    No. 2:22-CV-00942-TL, 2023 WL 3304250 (W.D. Wash. May 8, 2023) .................... 22, 23

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
    No. 05 CIV. 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ............................ 25

*SMH Enterprises, L.L.C. v. Krispy Krunchy Foods*,
    L.L.C., No. CV 20-2970, 2021 WL 6332246 (E.D. La. May 28, 2021) ........................ 24, 29

*SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*,
766 A.2d 442 (Del. 2000) ................................................................ 30

*Sonnino v. Univ. of Kansas Hosp. Auth.*,
221 F.R.D. 661 (D. Kan. 2004) ....................................................... 14

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
No. 3:16-cv-545, 2018 WL 1796293 (E.D. Va. Apr. 16, 2018) ......... 23

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*,
No. 15 CIV. 211 (LGS), 2021 WL 1553926 (S.D.N.Y. Apr. 20, 2021),
*aff'd in part, vacated in part, remanded sub nom. Syntel Sterling Best
Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*,
No. 21-1370, 2023 WL 3636674 (2d Cir. May 25, 2023) ................. 30

*TianRui Grp. Co. Ltd. v. Int'l Trade Comm'n*,
661 F.3d 1322 (Fed. Cir. 2011) ....................................................... 29

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
926 F. Supp. 2d 935 (S.D. Tex. 2013) ............................................. 28

*Weems v. Hodnett*,
No. 10-CV-1452, 2011 WL 3100554 (W.D. La. July 25, 2011) ......... 13

*X6D Ltd. v. Li-Tek Corps. Co.*,
No. 10-2327, 2012 WL 12952726 (C.D. Cal. Aug. 27, 2012) ........... 22

*Xtec, Inc. v. Cardsmart Techs., Inc.*,
No. 11-22866, 2014 WL 10268426 (S.D. Fla. May 15, 2014) ......... 23

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
183 F. Supp. 3d 1245 (S.D. Fla. 2016) ............................................ 23

**Statutes**

La. Stat. Ann. § 51:1437 ....................................................................... 17

Wis. Stat. § 134.90(6)(b)1 ..................................................................... 17

**Rules**

Fed. R. Civ. P. 33 and 34 ...................................................................... 14

Fed. R. Civ. P. 37(a)(1) ........................................................................... 2

Local Civil Rule 37 .............................................................................. 12

Local Civil Rule 37.1 .............................................................................. 2

## I.    INTRODUCTION

Defendants collectively filed 139 pages of discovery briefing, but their strategy for doing so can be summarized with a single word: delay. The underlying facts of this case paint a grim picture for Defendants on the merits: (1) Defendants each had access to PioneerRx's proprietary software for multiple years pursuant to signed System Agreements limiting that access for legitimate purposes (*see* Ex. 14 at 2, 14 ("In addition, neither party shall use the other party's Proprietary Information except as contemplated herein.")); (2) Defendants were contractually prohibited in the System Agreements from "copy[ing], duplicat[ing] or recreat[ing], or permit[ting] any other person or entity to copy, duplicate or recreate, any physical embodiment of the SOFTWARE" and "translat[ing], reverse engineer[ing], decompil[ing], . . . disassembl[ing], creat[ing] derivative works based upon, . . . [or] copy[ing] . . . the SOFTWARE" (*id.*); (3) Dan Safee of Danwins developed a competing software program while a customer of PioneerRx (*see* Ex. 15); and (4) even after terminating his relationship with PioneerRx, Mr. Safee sought and obtained unauthorized access to the PioneerRx program to develop and improve his own software. Exs. 16, 17. Unwilling to litigate on the merits, to date, Defendants have not produced a single e-Document, have relied upon cursory witness interviews to submit discovery responses that were later proven to be false—including, for example, asserting that "[t]he DRX software program was developed by Dan Safee without the assistance of anyone else" and later admitting that at least 5 others were involved (Ex. 18, No. 5)—and have sought to stay discovery multiple times. *See* Dkts. 107-1, 114-1, 124, 158.

These motions to compel—which are a Frankenstein cobbling together of prior (withdrawn) arguments—perpetuate these delay tactics. Defendants filed an initial set of motions to compel in June. But Defendants made no effort to meet and confer on the issues appearing in their motions. Notwithstanding that PioneerRx's then-existing responses provided more detail than courts require of trade-secret plaintiffs, to moot Defendants' motions, PioneerRx provided supplemental responses with even more detail. Defendants then withdrew their motions to compel—a *de facto* admission that the motions would not have been filed at all had Defendants

actually met and conferred. But at the same time, Defendants sought leave to file additional, unspecified motions on unidentified "recently raised discovery disputes." Dkt. 153-1 at 3. PioneerRx promptly emailed Defendants asking for "identification of the open issues . . . so that the parties have an opportunity to meet and confer and hopefully resolve [Defendants'] issues in advance of the filing deadline." Ex. 19 at 5–6. PioneerRx followed up on that email five times, each time requesting that, if Defendants believe any issues remain with PioneerRx's responses, Defendants identify them. *Id.* at 1–5. PioneerRx received no response (substantive or otherwise) to those emails. If Defendants actually believed there were any deficiency in PioneerRx's responses and wanted to resolve a discovery issue, they certainly should have done so, as the Federal Rules of Civil Procedure and the Court's Local Rules require a meet and confer on discovery motions. *See* Fed. R. Civ. P. 37(a)(1); Local Civil Rule 37.1. That Defendants did not even make an effort to meet and confer and repeatedly ignored PioneerRx's efforts to have Defendants comply with their obligations is an independent basis to deny these motions. Defendants' termination of their pending motions to compel only to file nearly identical ones is— by design—a colossal waste of time and resources.

Despite Defendants' instance that new issues were created by the supplements that Defendants requested, Defendants' Motions are nearly identical to those they withdrew. And like the previous motions, these new motions fail on the merits. They should be denied at least because the record unambiguously shows:

- The parties met and conferred in January regarding Interrogatory Nos. 1 and 2, and by March, PioneerRx had fully resolved Defendants' complaints as to these interrogatories by providing updated trade secret descriptions and explaining the overlap between its trade secrets and confidential information. *See* Dkt. 116 at 18–19.

- PioneerRx has continued to provide information responsive to Interrogatory Nos. 1 and 2, which it could not do previously, due to Defendants' delay in making the DRX software available for inspection. *See* Exs. 28–30.

- PioneerRx answered every one of Danwins' discovery requests to the fullest possible extent given Defendants' refusal to meaningfully participate discovery. PioneerRx's summary chart—previously included with PioneerRx's Opposition to Danwins' previous motion (Dkt. 146-1)—shows every interrogatory complaint Defendants lodged and how

each was resolved by July 24, 2023, before Defendants' newest motions. PioneerRx has provided an updated chart for the Court's convenience, including to reflect PioneerRx's August 22, 2023 supplemental responses which provided additional details regarding Defendants' misappropriation that PioneerRx recently discovered. Ex. 52. Indeed, as explained in the chart and as set forth below, much of the information Defendants demand PioneerRx provide (*e.g.*, how Dan Safee and Danwins misappropriated the trade secrets, how much money Defendants made by stealing PioneerRx's technology, etc.) can be derived only from Defendants themselves. But Defendants refuse to turn over *any* of this information. Defendants cannot have it both ways—complaining that PioneerRx has not explained what Defendants did, while withholding relevant information on this very topic.

- Defendants did not ever meaningfully meet and confer as to Defendants' other interrogatories. Instead, Defendants sent a boilerplate letter that demanded that PioneerRx "fully answer" those interrogatories, but never specified what it believed was inadequate. Defendants' failure to meet and confer is reason enough to deny its motion as to these interrogatories.

- PioneerRx's objections are proper. PioneerRx removed several of its general objections and then placed the remainder with the specific interrogatory responses to which they correspond to moot Defendants' generic complaint about general objections. PioneerRx confirmed this approach with Defendants' counsel who agreed to review the revised responses. Ex. 2 at 3; Ex. 3 at 1–2. Now, Defendants make the same complaints about these moved objections that they made with respect to PioneerRx's previously-submitted objections. *See generally* Dkts. 182, 184, 186. These are not "new issues" that Defendants insisted required the withdrawal of their prior motions and filing of new motions. These complaints were merely a pretext to waste time and ignore their own discovery obligations. In any event, PioneerRx's objections are proper—PioneerRx was clear that no information was being withheld on the basis of the objections (except for one instance of privilege). And PioneerRx's objections are not untimely and not waived, as they are the same objections PioneerRx made in its original, timely responses.

Because Defendants' Motions are essentially identical, to avoid inundating the Court with repetitive papers, PioneerRx submits a single response that addresses the arguments raised in all three Motions to Compel.

## II.    FACTUAL BACKGROUND

### A.    Defendants Failed to Participate in Discovery Prior to Filing This Motion

In January and February 2022, Danwins served discovery requests consisting of Interrogatories and Requests for Production ("RFPs"). Ex. 21. PioneerRx provided timely responses to all of Danwins' requests. *See* Ex. 9. Thereafter, the parties stayed the case for settlement but resumed the litigation on November 2, 2022. Dkt. 66. On December 19, 2022,

Defendants wrote to PioneerRx regarding Defendants' Interrogatory Nos. 1 and 2, but did not indicate what Defendants believed was deficient about PioneerRx's responses, stating only "[p]lease advise if you intend to supplement or revise your answer to Interrogatory No. [1 and 2], including the attached Exhibit A." Ex. 22 at 6. For Interrogatory Nos. 4, 6–13, and 15 (Danwins), Interrogatory Nos. 5–9, 11, 13–14, and 16 (Spencerport), and Interrogatory Nos. 6–7, 9, and 11– 15 (DRX), Defendants identified no information they believed was missing—instead, Defendants' letter generically stated for each interrogatory: "Please remove the conclusory and unsubstantiated objections. Please supplement your answer to Interrogatory No. [X] by providing all of the information requested." *See id.* at 6–15. Similarly, for RFPs Nos. 1–26, Defendants did not identify any specific issues or allegedly missing documents, and instead repeatedly stated, "[p]lease confirm that all responsive documents have been produced. Alternatively, please produce all documents responsive to this request." *Id.* at 8–9, 11–13, 15–16.

On February 2, 2023, the Parties met and conferred regarding Defendants' letter and deficiencies in Defendants' interrogatories. *Id.*, ¶ 5. During the meet and confer the Parties agreed PioneerRx would first provide supplemental responses to Interrogatory Nos. 1 and 2 and that Defendants would supplement their responses to PioneerRx's interrogatories and RFPs thereafter. *See* Dkt. 182 at 5–6. PioneerRx upheld its end of the bargain by supplementing on March 21, 2023. Exs. 10, 37, 40. Defendants did not uphold their end of the bargain to supplement their responses. Instead, Defendants failed to produce any emails or perform even a cursory search of ESI. *See* Dkt. 71-1. In fact, Defendants stonewalled until Plaintiff proved definitively that one of Defendants' interrogatory responses was untrue—which PioneerRx only discovered via third party discovery— and then Defendants did the minimum amount possible to update the proven-incorrect response.[1] Specifically, Defendants insisted Dan Safee developed the DRX software "without the assistance of anyone else" (Ex. 18, No. 5), but PioneerRx found independent evidence that this assertion was

---

[1] As explained in PioneerRx's Motion to Compel, Defendants' April 11, 2023 supplemental responses remained deficient and provided no substantive information responsive to PioneerRx's discovery requests. *See* Dkt. 71.

false (*see* Dkt. 71-1). After PioneerRx threatened to bring this issue to the Court, DRX amended its response to Interrogatory No. 5 to admit that "Phil Krupenya," "Emily Hart," "Greg Ladd," and "Mazin Mar"—individuals PioneerRx found and identified—helped develop the DRX software program. Ex. 23 at 4.

On April 26, 2023, PioneerRx moved to compel Defendants' responses after repeated unsuccessful attempts to resolve the discovery disputes without Court intervention. Dkt. 71. In their opposition brief, Defendants stated their intent to move to compel regarding Interrogatory Nos. 1 and 2 and "other discovery matters" within one week. *See* Dkt. 78 at 1, 6, n.4. Defendants did not indicate what those "other discovery matters" were, nor did they meet and confer with PioneerRx to identify them. One week passed and Defendants did not file any motion to compel.

On May 25, 2023, PioneerRx filed a reply supporting its motion to compel which contained third-party document productions irrefutably showing Defendants' misappropriation. *See* Dkt. 71-1 at 6; Dkt. 89. Specifically, PioneerRx subpoenaed individuals that worked with Dan Safee to misappropriate PioneerRx's software and create the competing DRX software. In response, PioneerRx received hundreds of emails related to DRX software development that, to date, Defendants have not turned over and still refuse to turn over (*e.g.*, Ex. 24), numerous undisclosed third-party developers that Defendants had failed to identify (*e.g.*, Ex. 25), and a massive online repository showing dozens of iterations of DRX software (*e.g.*, Ex. 26). Worse, emails from one apparent DRX employee (Emily Bychkov, whose email is "emily@getdrx.com") shows unambiguously that DRX used PioneerRx's software to create its copycat product. Ex. 27. As that email chain showed, DRX received screenshots of a PioneerRx software feature along with a request to make DRX's software operate "like they do in PioneerRx." *Id.* In response, even though this lawsuit was ongoing, DRX promised to "check with Dan" and "submit a requests [sic] to add them as features to DRX." *Id.* DRX never produced these emails and insisted in its discovery responses that they did not exist. *See, e.g.*, Ex. 1 at 2 (stating "DRX does not possess documents responsive to" PioneerRx's request for "[a]ll Communications between You and any Third Party Concerning PioneerRx"). The fact that PioneerRx only obtained these via third-party discovery

confirms that PioneerRx (not Defendants) is entitled to discovery relief—including entry of an ESI order requiring the parties to search for and produce emails and other ESI.

**B.    Without Meeting and Conferring, Defendants Launched a Series of Discovery Motions, Motions to Stay, and Motions for Summary Judgment in June 2023**

On June 7, 2023, shortly after PioneerRx told the Court about the substantial, damaging evidence Defendants had withheld, Defendants filed their now-withdrawn motions to compel (*see* Dkts. 94, 99, 103). Even though PioneerRx learned of Defendants' supposed concerns regarding Interrogatory Nos. 3–16 and certain RFPs for the first time upon reviewing Defendants' motions, PioneerRx nonetheless sought to resolve them without Court intervention. On June 19, 2023, PioneerRx proposed amendments to its discovery responses to moot Defendants' discovery concerns—including with respect to Defendants' demands that PioneerRx's general objections be altered and made specific to each interrogatory. *See* Ex. 2. Specifically, as PioneerRx explained to Defendants' counsel, PioneerRx had objections that applied to each one of Defendants' discovery requests—rather than repeat them, PioneerRx put them in a list preceding individual responses to the requests. Regardless, PioneerRx made clear to Defendants that PioneerRx "has not withheld any information or documents on the basis of a general objection." Ex. 2 at 2.

Subsequently, PioneerRx made certain proposals that it believed would resolve issues raised in Defendants' initial motions to compel (*see* Ex. 2), including repeating its general objections in individual discovery responses. Defendants did not respond. On June 26, 2023, the Parties met and conferred, and counsel for PioneerRx reiterated its offer to make certain amendments in an attempt to narrow the issues. *See* Ex. 3. Counsel for Defendants indicated he personally had not seen the June 19, 2023 email (because of an alleged spam filter issue) so PioneerRx resent the email, confirmed it had been received by Defendants, and asked Defendants to let PioneerRx know if the proposed resolutions would resolve Defendants' concerns by no later than June 28, 2023. *Id.* PioneerRx then sought an extension to allow Defendants to provide a response, which the Court granted. Dkt. 110. Defendants never responded and raised no objections.

On July 2, 2023, having heard nothing from Defendants' counsel, PioneerRx sent a letter

containing similar proposals to resolve the similar alleged issues raised in Defendants' motions to compel. Ex. 4. Again, PioneerRx asked Defendants to state any concerns with PioneerRx's proposals. *Id.* PioneerRx asked for Defendants' position by July 5, 2023. *Id.* Again, Defendants did not respond.

Having twice heard no objection, on July 12, 2023, PioneerRx sent proposed amended interrogatory responses implementing its proposals, which moved general objections into individual responses, as PioneerRx indicated it would do on the June 19, 2023 call. Ex. 5. Defendants again refused to engage, stating they "have no obligation to review drafts of an opposing party's discovery responses." Ex. 6. PioneerRx asked Defendants to reconsider and confirmed Defendants "can consider those response[s] not as drafts but as actual responses" on July 13, 2023. *Id.* Defendants finally responded on July 18—nearly one month after PioneerRx's initial attempt to resolve these purported issues. Incredibly, after three extensions and numerous good-faith efforts by PioneerRx, Defendants did nothing to meaningfully narrow disputes. Instead, for every single interrogatory, Defendants insisted the proposed supplement "does not cure most of the deficiencies in PioneerRx's response" and "does nothing to resolve most of the issues raised in the motion to compel." Ex. 7. But Defendants never identified what "most of the issues" supposedly remain outstanding. Thus, PioneerRx's counsel once again asked Defendants to specifically identify what issues remained in view of PioneerRx's supplemental responses. Ex. 8. Defendants' counsel stated that he was in trial, would not be able to respond thereafter, but claimed his letters were "clear" and again insisted "PioneerRx's supplemental responses did not resolve any issues. They only raised more issues." *Id*. PioneerRx formally served these responses—which Defendants had since July 12—on July 24, 2023 (Ex. 39, 42, 44, 47–49) and filed its opposition to Defendants' previous Motion to Compel on the same day. *See* Dkt. 136-3. There were no differences in substance between the July 24, 2023 served version and the July 12, 2023 drafts. *Compare* Ex. 5, *with* Ex. 39, 42, 44, 47–49.

### C.    Defendants Terminated Their June 2023 Motions to Compel

After PioneerRx served its supplemental responses, Defendants' counsel wrote to PioneerRx saying that "the supplemental responses resolved little" but "did change things," without explaining what exactly the supplemental responses changed (if anything). Ex. 19 at 7–8. Defendants' counsel further indicated Defendants planned to terminate their then-pending Motions to Compel because PioneerRx's supplemental interrogatory responses purportedly "raise new issues that will have to be addressed," again without explaining what those alleged new issues were. *Id.* At most, Defendants' counsel indicated that "PioneerRx moving objections has now resulted in some discovery responses which were not objectionable before now becoming objectionable" (*id.*), presumably referring to PioneerRx's attempt to resolve some of Defendants' purported issues by repeating the common objections applicable to all discovery requests within each discovery response, as explained above in Section II.B.

In response, PioneerRx stated it did not object to Defendants' plan, but asked Defendants: (1) to identify what new issues were created; and (2) to meet and confer to discuss (and potentially resolve) any such new issues. *Id.* at 6. Defendants' counsel never explained what those new issues were, and never responded to the request to meet and confer on any such new issues. On July 28, 2023, Defendants moved to terminate their then-pending Motions to Compel, which the Court granted on July 31, 2023. Dkt. 154.

### D. Defendants Refused To Respond To PioneerRx's Multiple Requests To Meet And Confer On Any Remaining Issues

As explained above, on July 28, 2023, after Defendants indicated their intention to terminate their prior motions, PioneerRx asked Defendants to "let us know what you believe the issues are so that we can consider them in advance of any meet and confer." Ex. 19 at 6. Hearing nothing, on August 4, 2023, PioneerRx again asked Defendants for a specific "identification of the open issues by August 16 (or as soon as possible thereafter) in light of the August 30, 2023 deadline, so that the parties have an opportunity to meet and confer and hopefully resolve your issues in advance of the filing deadline." *Id.* at 5–6. One week later, on August 11, 2023, PioneerRx again wrote to Defendants, stating: "[i]f Defendants maintain that there are 'issues' with

PioneerRx's discovery responses, please identify them in writing as requested below so that we may consider Defendants' position." *Id.* at 5. On August 14, 2023, counsel for Defendants stated that, due to a jury trial in August, Defendants would not be able to provide a response by August 16. *Id.* at 4. One week later, on August 21, 2023 (after the conclusion of Defendants' counsel's trial), PioneerRx again wrote to Defendants to ask "when we can expect your identification of issues to the responses Defendants have had since July 12, 2023 if Defendants still intend to file a motion." *Id.* at 3. The following day, on August 22, 2023, PioneerRx provided supplemental responses to Interrogatory No. 1 (described below) and noted that "Defendants' motions (if any) are due August 30th, but that is no basis to disregard the Court's meet and confer requirement. As you know, we have been requesting an identification of issues and your availability to meet and confer since August 4th." *Id.* at 1–2. Defendants did not respond to these requests. *See* Ex. 19.

### E.    PioneerRx Again Supplemented Its Responses to Defendants' Interrogatory Nos. 1 and 2 on August 22, 2023

On August 22, 2023, PioneerRx supplemented its responses to Interrogatory Nos. 1 and 2 a second time based on its investigation of the DRX software up to that point. Ex. 28–30. In these supplemental responses, PioneerRx added nearly 60 pages of detail directly responsive to the information sought by the interrogatories, including Defendants' request that PioneerRx provide information demonstrating the "reasonable basis to believe that one or more of the Defendants has used or is using the Trade Secret" and "how Danwins, or another Defendant, used the specific Trade Secret allegedly Misappropriated from PioneerRx." Ex. 28 at 1–2. Specifically, PioneerRx's second supplemental response to Interrogatory Nos. 1 and 2 describes how Danwins and DRX misappropriated the trade secrets by accessing PioneerRx's software on their own and then via Spencerport, who was contractually prohibited from granting DRX and Danwins access to the software. *Id.* at 7–8. PioneerRx then explained that Mr. Safee began developing the DRX software as early as 2016, in violation of Danwins' ongoing System Agreement. *Id.* at 9–10. PioneerRx described how Mr. Safee repeatedly contacted PioneerRx customer support to learn details about the software, and identified a log of interactions between Mr. Safee and PioneerRx. *Id.* at 11; Ex.

34). PioneerRx further explained how Mr. Safee terminated Danwins' contract with PioneerRx in December 2019, but still wanted access to PioneerRx's data server—the following year, Mr. Schladebeck and Spencerport provided Mr. Safee access to PioneerRx's confidential information to further understand PioneerRx's software, architecture, and functionality, including granting Mr. Safee access to reports containing prescription information and database information, and SQL access. Ex. 28 at 11–12.

Further, while PioneerRx's analysis of DRX's software is ongoing, PioneerRx's second supplemental response to Interrogatory Nos. 1–2 provided exemplary details regarding how certain of PioneerRx's trade secrets were incorporated in, used by, or disclosed by the DRX software. For example, PioneerRx provided specific details showing how the DRX software made use of PioneerRx's trade secrets covering ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ *Id.* at 12–62. Defendants' Motions to Compel nevertheless read as if these supplemental responses do not exist.

**F.    Rather Than Engage with PioneerRx's Multiple Attempts to Meet and Confer, Defendants Filed New Motions To Compel Largely Raising The Same Arguments And Largely Ignoring The Content Of PioneerRx's Supplemental Responses**

Defendants refiled their Motions to Compel on September 20, 2023. The re-filed motions are essentially identical to the motions filed previously, with cut-and-paste argument from a series of other briefs filed by Defendants. Specifically, like the previously filed and terminated motions, Defendants' instant motions address:

1.    The propriety of PioneerRx's objections;

2.    PioneerRx's responses to Interrogatory Nos. 1 and 2; and

       3.      PioneerRx's responses to other interrogatories.

*See* Dkt. 182 at ii.[2] Also like the prior motions, these motions make passing reference to PioneerRx's response to RFPs. *Id.* Defendants' instant motions do not acknowledge, much less address, any of the arguments PioneerRx raised in its July 24 Opposition to Danwins' previous motion. Nor do Defendants' Motions address in any detail the multiple substantial supplements PioneerRx provided to Interrogatory Nos. 1 and 2 since Defendants' initial motion. Instead, despite (or perhaps due to) the Court's instruction not to incorporate by reference any prior briefing, Defendants' briefs are largely cobbled together as a cut-and-paste patchwork of the previous (withdrawn) Motions to Compel and Motion for Summary Judgment. Indeed, Defendants' instant motions include internal citations to footnotes that do not exist, but do exist in previously filed motions Defendants copied and pasted from. *See, e.g.*, Dkt. 182 at 20, n.32 (cross-citing to note 34, which does not exist in that brief).

       With respect to argument number 3, Defendants' only new argument is that PioneerRx's supplemental responses to various Interrogatories are improper because PioneerRx repeated certain objections common to all responses into its specific responses to those interrogatories at Defendants' request (*i.e.*, repeating them 14 times instead of stating them once and noting they apply globally). *See* Dkt. 182 at 25–49. But Defendants' argument regarding these objections (and request to strike them) is the same unavailing argument raised in its previously filed and terminated motion. *See* Dkt. 94-1 at 2 (arguing that certain objections were improper and requesting they be stricken from PioneerRx's interrogatory responses).

## III.    ARGUMENT

      Defendants' motions should be denied. On the merits, Defendants seek an order compelling PioneerRx to (1) supplement its responses to Defendants' RFPs and Interrogatories to remove its

---

[2] For the Court's convenience, throughout this Opposition, PioneerRx cites to Danwins' newly-filed Motion to Compel (Dkt. 182) to discuss arguments and text common to all three Defendants' motions. Defendants makes the same arguments regarding PioneerRx's objections and PioneerRx's responses to Interrogatory Nos. 1 and 2 as to all Defendants. *Compare* Dkt. 182, *with* Dkt. 184 (Spencerport), *and* Dkt. 186 (DRX).

allegedly improper objections; (2) supplement its responses to Defendants' Interrogatory Nos. 1 and 2, allegedly because PioneerRx has failed to adequately identify its trade secrets; and (3) supplement its responses to Defendants' other RFPs and Interrogatories. Defendants failed to provide reasonable grounds for these requests. Further, the Court should not entertain these motions at all. If Local Civil Rule 37 is to serve any purpose whatsoever, this is certainly a case where the motions to compel should be denied based on Defendants' failure to make any effort to meet and confer.

### A.    PioneerRx's Objections Are Proper

As an initial matter, there is no genuine dispute as to PioneerRx's objections. PioneerRx has informed Defendants that PioneerRx is not withholding documents or information on the basis of its general objections. Exs. 2, 3. There is thus nothing to compel.

Defendants' Motions should also be denied on the merits. Just as in their previous Motions to Compel, Defendants argue PioneerRx's responses to RFPs and Interrogatories are "replete with general objections, conclusory objections and non-specific objections" (Dkt. 182 at 3), and ask the Court to strike PioneerRx's allegedly improper objections. But PioneerRx's objections are unquestionably proper.

Defendants' position that general objections are never allowed is not the law. Rather, courts in the Fifth Circuit have explained that "the disfavor courts have towards general objections applies *only* when the responding party solely offers the general objections and does not include a specific objection as well." *Cent. Oil & Supply Corp. v. Carter*, No. 3:21-CV-03285, 2022 WL 5061313, at *3 (W.D. La. Aug. 4, 2022) (emphasis added). The court in *Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) likewise upheld general objections where "Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections." *See also Hsieh v. Apache Deepwater, LLC*, No. CV 19-00408, 2021 WL 3502467, at *8 (M.D. La. Aug. 9, 2021) ("[W]hile some portions of Defendants' objections would be considered boilerplate or general if they stood alone, those portions of the responses must be read in the context of the remaining,

12

more detailed explanations for objection based on relevance and burden.").

Here, PioneerRx's provided both general and specific objections in response to Defendants' written discovery requests, an approach that the authorities above have confirmed is proper. Ex. 9. For example, PioneerRx's original submission objected to Danwins' Interrogatory No. 5 as "premature," with the specific explanation that "discovery [was] ongoing, and Danwins ha[d] produced limited documents in this case." *Id.*, No. 5. PioneerRx later supplemented its response to provide additional information it learned through discovery. *See* Exs. 10, 18. As a further example, in response to Danwins' RFP No. 7 (seeking all documents created by, authored by, or originating from Danwins), PioneerRx provided a specific objection to the RFP "to the extent it seeks documents which are equally available to Danwins." Ex. 11 at 7. Moreover, PioneerRx clarified that it "is in the process of searching for documents responsive to this request" and would supplement its response "if any responsive documents are located." *See id.* And PioneerRx made it clear that it was not withholding any responses based on these responses.

The cases cited by Defendants simply do not apply here. In *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011), certain objections were found improper because "it is ***impossible to know*** whether information has been withheld." Here, PioneerRx is not withholding information (other than on the grounds of privilege) pursuant to any of its objections. Defendants' reliance on *Johnston v. Transocean Offshore Deepwater Drilling, Inc.*, No. CV 18-491, 2019 WL 1558040, at *1 (E.D. La. Apr. 10, 2019) is also misplaced. There, the objections were improper because they "obfuscate and confuse . . . what objections [the objecting party] is actually making, what information it has actually produced and whether a complete response has been made." Here, there is no such obfuscation—rather, Defendants know that PioneerRx is not withholding any information subject to their objections. Indeed, PioneerRx has repeatedly explained that its current responses are as complete as possible and that future updates will be made once Defendants participate in discovery. *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 667 (D. Kan. 2004) disapproved of certain "hypothetical or contingent" objections (not general objections) which Defendants have not challenged here. And in *Cartel Asset Mgmt.*

13

*v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *22 (D. Colo. Feb. 8, 2010) the general objections were improper only in a specific instance where the party attempted to use general objections as a shield to avoid providing interrogatory responses.

Defendants' arguments that PioneerRx's objections are "untimely" is equally without merit. Tellingly, Defendants cite no cases supporting their position that PioneerRx's objections are untimely—nor can they, as each of the objections found in PioneerRx's current responses were contained in the responses it served initially. None of the objections challenged in Defendants' Motion is new. In fact, Defendants admit that the objections in question were included in PioneerRx's initial responses. Dkt. 182 at 3. In other words, all of the objections that Defendants now argue were "untimely" were raised before the initial response deadline. Moreover, Defendants' untimeliness argument is inconsistent with Defendants' own approach to discovery. For instance, in Danwins' initial response to PioneerRx's RFP No. 22, it did not include any objection based on privilege. Ex. 32 at 9–10. However, more than a year later, Danwins inserted an entirely new objection stating that "to the extent [the RFP] seeks documents protected by the attorney-client and attorney work product privilege." Ex. 31 at 5. Defendants obviously believe that the parties are allowed to make new objections later in discovery. Thus, even if PioneerRx had made new objections (it has not) they would be proper, as Defendants should not be permitted to argue one thing and do another. *Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*, No. CV 19-12948, 2021 WL 1940801, at *5 (E.D. La. May 14, 2021) (rejecting Defendants' argument that previous order directed to Plaintiff did not also apply to similarly-situated Defendants because "what is good for the goose is good for the gander").

On June 26, 2023, PioneerRx conferred with Defendants to discuss their concerns regarding these objections. Defendants did not argue that PioneerRx's objections were unfounded but insisted that "general objections are not allowed in this district." Ex. 3 at 1. PioneerRx disagreed, explained the legal concepts described above, and "re-affirmed that no documents were being withheld pursuant to those objections." *Id.* Defendants "demanded that [PioneerRx] remove the general objections anyway" and PioneerRx stated it "would not agree to waive our well-

founded objections." *Id.* Instead, solely in response to Defendants' concerns, PioneerRx confirmed that its general objections specifically applied to the discovery responses in question and reiterated that, except in narrow, well-identified instances,[3] it was not withholding any documents on the basis of its objections. PioneerRx further offered to move its general objections—which applied to each request—into each discovery response and asked Danwins' counsel if doing so would moot the issue. Ex. 3. Defendants' counsel did not object to this approach and asked PioneerRx to implement it so that he could review the objections in this format. Ex. 2 at 3; Ex. 3 at 1–2 ("We stated . . . solely to resolve this issue, that we would move the general objections to each of the individual interrogatory responses. We asked you whether this would resolve this dispute and you asked to see our revision. You did not identify any other relief you would ask the Court to order. As such, we will do so and we expect that this resolves Defendants' issues with the general objections."). On July 12, 2023, PioneerRx provided Defendants draft supplemental discovery responses moving its general objections to specific responses. Ex. 5. Defendants' counsel then responded by insisting that PioneerRx's objections were "waived." Ex. 12; *see also* Ex. 39 (supplemental interrogatory responses as served). For all the reasons explained above, Defendants are incorrect—there is no basis to overrule or strike PioneerRx's well-founded objections.

### B.     PioneerRx Sufficiently Responded to Defendants' Interrogatory Nos. 1 and 2

Defendants argue PioneerRx has not provided complete responses to Interrogatory Nos. 1 and 2, and that PioneerRx has failed to identify its trade secrets with sufficient particularity. Dkt. 182 at 6–7. In doing so, Defendants raise the same arguments they previously raised and withdrew—nearly verbatim. *See* Dkt. 94-1; Ex. 33 (highlighting identical text from Danwins' prior motion to compel in yellow and from Defendant's Motion for Summary Judgment in green). Specifically, Defendants request that the Court compel PioneerRx to (1) split the features of its pharmacy software into trade secrets and non-trade secret confidential information; (2) describe

---

[3] For example, PioneerRx is withholding documents responsive to DRX's Interrogatory No. 14 (requesting any investigation, analysis, and/or forensics conducted by PioneerRx regarding its complaint) on attorney client-privilege/work product grounds. There are no nonprivileged investigations, analyses, and/or forensics conducted responsive to this interrogatory.

its trade secrets "with sufficient particularity to identify what makes this particular aspect of PioneerRx's pharmacy program unique;" (3) de-designate its Trade Secret List to "Confidential;"[4] and (4) "reduce substantially its number of trade secrets." Dkt. 182 at 16–17, 22–24. Defendants have no basis for any of these requests, as explained below.

### 1. PioneerRx Is Not Required to State That Its Trade Secrets Are Not Trade Secrets

Defendants first insist PioneerRx must state whether each item on its Trade Secret List is a trade secret or "non-trade secret confidential information." Dkt. 182 at 16. Defendants incorrectly argue that, because PioneerRx listed the same information in response to Interrogatories 1 and 2, PioneerRx must believe the features identified in its Trade Secret List are both trade secret and non-trade secret information. Not so. Rather, as PioneerRx has repeatedly explained, this "trade secret vs. non-trade secret" framework is one purely of Defendants' making and it does not comport with the law, which confirms that information can be both trade secret **and** confidential. As PioneerRx has repeatedly explained to Defendants, all 151 items on PioneerRx's Trade Secret List are trade secrets. However, Interrogatory No. 2 appears to ask: if something in Interrogatory No. 1 is later found not to be a trade secret, whether PioneerRx contends that such information is nonetheless "confidential information" under the parties' contractual agreements. *See* Ex. 13 at 7–8. PioneerRx's response confirms its contention: all 151 items are confidential (regardless of trade secret status) such that Defendants' use of those items constitutes unfair trade practices and a breach of contract. *See id.* at 8. ("PioneerRx further objects to this Interrogatory to the extent that it attempts to suggest that PioneerRx's confidential information cannot also qualify as a trade secret.").

There is nothing confusing or contradictory about this position—in fact, Courts have repeatedly found that contractual remedies do not conflict with trade secret misappropriation. *See, e.g., ABC Acquisition Co., LLC v. AIP Prods. Corp.*, No. 18 CV 8420, 2020 WL 4607247, at *19

---

[4] As used herein, the "Trade Secret List" refers to PioneerRx's Exhibit A attached to its Response to Defendants' First Set of Interrogatories, which describes 151 trade secrets in detail.

(N.D. Ill. Aug. 11, 2020) (finding breach of confidentiality agreement does not conflict with trade secret misappropriation). *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002) makes this clear. There, the court concluded that the plaintiff did not have a viable trade secret claim but nonetheless could proceed on a contract claim, because its agreement stated that the software and related materials "'furnished by' plaintiff could not be 'examined . . . for the purpose of creating another system' and the recipient likewise could not 'use or disclose or divulge to others any data or information relating to' the system or 'the technology, ideas, concepts, know-how, and techniques embodied therein.'" *Id.* at 584. The court further noted that Wisconsin's "Section 134.90(6)(b)1 implies that contracts about intellectual property are valid, even when they exceed the domain of trade secrets." Similarly, by its terms, Louisiana's trade secret statute "does not affect [] contractual or other civil liability or relief." *See* La. Stat. Ann. § 51:1437.

Here, Danwins and Spencerport both signed an agreement with provisions very similar to those in *IDX*, promising not to use PioneerRx's software for any purpose other than "normal business operations," and to not allow others to "copy" or "recreate" the software. *See* Ex. 14 at 2, 14. PioneerRx's responses to Interrogatory Nos. 1 and 2 confirm that, in any instances where PioneerRx's information were found to not rise to the level of a trade secret, its contract claims still cover use or disclosure of that information.

Strikingly, Defendants do not address any of these issues or cases in their Motion, despite PioneerRx providing the above explanation in its Oppositions to Defendants' now-withdrawn motion to compel. *See* Dkts. 138, 139, 145. The case law does not support Defendants' position, Defendants made no effort to address it in their renewed motion, and Defendants should have, at least this time around, recognized that before filing. But Defendants instead ignored PioneerRx's prior Opposition addressing these issues, ignored PioneerRx's efforts to meet and confer (Ex. 19 at 1–6), and filed a carbon-copy of the same motion PioneerRx has already addressed.

Defendants' position finds no legal authority and is illogical on its face. The law does not require PioneerRx to separate its technology into trade secret and "non-trade secret confidential information" as Defendants insist.

17

### 2. *PioneerRx Has Sufficiently Described Its Trade Secrets*

Next, Defendants argue PioneerRx's Trade Secret List is "vague and overly broad"[5] Dkt. 182 at 17. This identical issue has already been briefed with respect to Defendants' Motion to Stay, Defendants' Motion for Summary Judgment, and Defendants' previously filed and terminated Motions to Compel. *See* Dkt. 120, 5–15; Dkt. 133, 9–18 (explaining how PioneerRx sufficiently described its 151 trade secrets with reference to specific pages within supporting documentation); Dkts. 136-3, 138, 139. The features described in Defendants' trade secrets list are not general descriptions or *possible* trade secrets but "tangible trade secret material[s]," such as proprietary steps, processes, and interfaces for PioneerRx's pharmacy management software. *See Brown & Root Indus. Servs., LLC v. Brown*, No. CV 21-291, 2022 WL 4492087, at *5 (M.D. La. Sept. 9, 2022). Here, just as they did in their motion for summary judgment (*see* Dkt. 118 at 19–24), Defendants raise two arguments to suggest PioneerRx's trade secrets are not sufficiently detailed: (1) its descriptions are "too broad" and "provide no detail," and (2) "thousands of pages of documents" are cited. Dkt. 182 at 20–21. Neither of these arguments is correct.

**First**, Defendants argue PioneerRx's trade secrets "describe[] categories or broad concepts, not actual concrete trade secrets." *Id.* at 20. That is wrong. PioneerRx provided a narrative description for each identified trade secret. *See* Ex. 13 at Ex. A. Each entry also cited specific portions (typically a few pages—not "thousands") of PioneerRx confidential and proprietary documents describing how it is implemented in PioneerRx's products in detail, including the functional steps, procedures, and methods for achieving PioneerRx's trade secret software functionality.[6] *Id.* (citing Ex. 35). Courts have repeatedly confirmed this approach is sufficient.

---

[5] Defendants also argue PioneerRx should provide more detailed descriptions in response to Interrogatory No. 2. (Dkt. 182 at 44), but as previously explained, PioneerRx identified the 151 items in its Trade Secret List as confidential information. Thus, PioneerRx addresses these arguments together.

[6] The manual and the software were provided in discovery, allowing Defendants' counsel (or their experts) to use the trade secret descriptions and cited manual pages to find and understand the software functionality. To PioneerRx's knowledge, Defendants have never logged into the software.

*See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, No. 08-C-5427, 2012 WL 74319, at *15–*18 (N.D. Ill. Jan. 10, 2012) (plaintiff went beyond "identifying broad areas of technology" by "refer[ring] to particular documents, files, inventions, and aspects of its technology"); *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11 C 1768, 2015 WL 1275908, at *12 (N.D. Ill. Mar. 17, 2015) (finding trade secret disclosure sufficient where plaintiff identified pages of "spec packages" and "lists of tools that it claims are trade secrets"); *Act II Jewelry, LLC v. Wooten*, 318 F. Supp. 3d 1073, 1089 (N.D. Ill. 2018) (plaintiff "specifically identified" documents including product designs and strategic plans). Indeed, PioneerRx's citations to specific pages of produced documents showing implementation of its trade secrets bears no resemblance to the "boilerplate listing of functions and categories" Defendants accuse PioneerRx of reciting. Dkt. 182 at 19. An examination of the actual evidence pertaining to the very items Defendants complain about confirms that PioneerRx has sufficiently identified its trade secret information:





The evidence above, which Defendants do not address in any substantive portion of their responses, shows that PioneerRx described its trade secrets with sufficient particularity and detail to put Defendants on notice of what they misappropriated. *See also* Dkt. 120 at 6–12 (describing PioneerRx's detailed disclosures vis-à-vis Trade Secret Nos. 1, 4, 40, 53, 85, and 120). Indeed, the evidence above is only a portion of the recited functionality for each trade secret, with the manuals

and the software itself (which PioneerRx has made available in discovery) supplying more details about each trade secret at issue. And significantly, Defendants mention only four of the 151 trade secrets identified by PioneerRx, ignoring the remaining 147 trade secrets, each of which is described with specific, pincite references to documents. Ex. 13.

Further, while Defendants claim they do not know what trade secrets are at issue, their briefing belies this assertion. Defendants state that after performing "a cursory review of PioneerRx's 151 alleged trade secrets" they concluded that "most, if not all, of the functions or categories described therein are common to all pharmacy software computer programs. In other words, PioneerRx's descriptions merely describe functions common to most pharmacy software systems." Dkt. 182 at 21–22. But "the fact that [defendant] is able to craft detailed arguments for why [plaintiff's] information does not constitute trade secrets means that [plaintiff] has sufficiently identified that information." *See Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014). Thus, Defendants do understand what functionality is at issue (although notably they provide no evidence to support their assertion that PioneerRx's functionality is "common to most pharmacy software systems"). *Id.*

**Second**, Defendants' criticism that PioneerRx cites "1000's of pages of documents" is provably wrong. Defendants point to cases where trade secret holders simply recited generic descriptions of trade secrets and pointed to hundreds or thousands of *undifferentiated* pages. *See, e.g.*, *RealD Spark LLC v. Microsoft Corp.*, No. 2:22-CV-00942-TL, 2023 WL 3304250, at *5 (W.D. Wash. May 8, 2023); *X6D Ltd. v. Li-Tek Corps. Co.*, No. 10-2327, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012); *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 817 (W.D. Wis. 2001). But here, PioneerRx cited to detailed, specific information that explains the steps, procedures, and parameters of the software for each of its trade secrets. That is unquestionably sufficient. *See Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-00024-CHB, 2021 WL 1062553, at *17 (W.D. Ky. Mar. 19, 2021) (finding plaintiff's trade secret identification sufficient despite allegations of "vague[ness]" where plaintiff "identif[ied] by bates-label numbers which documents previously produced constitute its identified trade secrets").

Defendants further complain that "PioneerRx cannot simply respond by saying that Defendants misappropriated its entire software program" (Dkt. 182 at 21), but this argument is likewise untenable. Courts have repeatedly held that "a software compilation and [] overall design of a software program may be protectable as a trade secret." *Xtec, Inc. v. Cardsmart Techs., Inc.*, No. 11-22866, 2014 WL 10268426, at *7–*8 (S.D. Fla. May 15, 2014); *see also XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1257 (S.D. Fla. 2016) ("[Plaintiff] claim[s] the entire AuthentX system as a trade secret, which—as the Court held earlier in the Summary Judgment Order—is permissible."); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545, 2018 WL 1796293, at *8 (E.D. Va. Apr. 16, 2018) ("After all, it is clear that information may be considered a trade secret in isolation or in combination with other information, even if the individual components of a combination trade secret are not identified with enough specificity to constitute trade secrets when read individually."). And Defendants' claim that "PioneerRx's position that nothing in the user manuals is a matter of general knowledge in the trade is simply not plausible" (Dkt. 182 at 21) is itself unavailing. Defendants ***cite nothing in the user manual*** that is "general knowledge in the trade," much less evidence that PioneerRx's trade secrets are publicly known.

Defendants also cite inapposite cases where trade secret disclosures were found inadequate due to generality. For instance, *RealD* actually demonstrates that PioneerRx's disclosure is sufficient. There, the plaintiff argued that its trade secret algorithms and datasets "might be contained in a nearly 3000-page range of its production." *RealD*, 2023 WL 3304250 at *5. In response, the court ordered the plaintiff to "specify the pages within [the production] that reveal those algorithms" and "datasets." *Id.* at *5–*6. But PioneerRx ***has already done this*** by pointing to pages in its supporting documentation (and providing the software itself) pertaining to each of its trade secrets. *See also Microvention, Inc. v. Balt USA, LLC*, No. 820-CV-02400 JLS (KESx), 2021 WL 4840786, at *4 (C.D. Cal. Sept. 8, 2021) (finding "thousands" of trade secrets sufficiently identified where Plaintiff cited to a "Bates Number range for every distinct alleged trade secret"). Defendants' citation to *SMH Enterprises, L.L.C. v. Krispy Krunchy Foods*, L.L.C.,

No. CV 20-2970, 2021 WL 6332246 (E.D. La. May 28, 2021) is likewise inapplicable because in that case, the court found that nearly all trade secrets had been identified with sufficient particularity. *Id.* at *14.

*Am. Biocarbon* is even further afield. In that case, the court found the plaintiff's trade secret identification lacking because the plaintiff "deliberately avoided *any* effort to set boundaries within which its trade secrets lie," and attempted to assert "unbounded" trade secrets "without limitation" in an attempt to "envelop[] every aspect of the bagasse pellets industry." *Am. Biocarbon, LLC v. Keating*, No. 20-00259-BAJ, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020). In contrast, PioneerRx's trade secrets are well-defined in its Trade Secrets List and corresponding disclosures in its User Guide, and cover no more than PioneerRx's secret and valuable proprietary information. Indeed, as Defendants themselves point out, "[t]here are many pharmacy software programs on the market" and "[t]he website Capterra identifies 177 pharmacy software products" (Dkt. 182 at 20, n. 3), but there is no evidence in the record that PioneerRx's trade secrets are found in those programs. PioneerRx is not attempting to "envelop every aspect of the [pharmacy management software] industry"—only the innovations PioneerRx created and protected, and which Defendants had access to and misappropriated.

Defendants' laundry list of other cases fares no better (*see id.* at 9–16), as these cases involve purported disclosures far less detailed than what PioneerRx has provided. *See, e.g.*, *Kalencom Corp. v. Shulman*, No. CV 17-5453, 2018 WL 1806037, at *3–*5 (E.D. La. Apr. 17, 2018) ("[O]ther confidential information" and "information regarding many other clients" were insufficient descriptions.); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 679 (N.D. Ga. 2007) ("[D]ata processing algorithms" was an insufficient description.); *Am. Registry, LLC v. Hanaw*, No. 2:13-CV-352, 2013 WL 6332971, at *4 (M.D. Fla. Dec. 5, 2013) ("'[S]oftware,' 'financial data,' 'lists,' and 'information and records'" were insufficient descriptions.); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292 (DLC), 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008) (defendant failed to offer any explanation rebutting defendants' accusation that the trade secrets were vague and ambiguous); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th

Cir. 1998) (broad catchall phrase "including every dimension and tolerance that defines or reflects that design" was insufficient); *qad. inc. v. ALN Assocs., Inc.*, No. 88 C 2246, 1990 WL 93362, at *3 (N.D. Ill. June 20, 1990) (holding that the mere statement "[e]verything you got from us was a trade secret" was, by itself, insufficient); *IDX Sys.*, 165 F. Supp. 2d at 817 (broad descriptions without "specific concepts, designs, methods or processes" was insufficient).

Defendants also all but ignore the substantial supplements PioneerRx provided in its supplemental responses, which is surprising given that Defendants withdrew their prior motions to allegedly address new material. In each of the instant motions, Defendants contend in conclusory fashion that "[a]s respects the new information provided by PioneerRx in PioneerRx's August 22, 2023 supplemental responses to interrogatory nos. 1 & 2 (SPT Exh. 15, pp. 2-62), none of these additional 60 pages provide any more detail about exactly what the trade secret is alleged to be." Dkt. 182 at 22. This argument is plainly wrong, which is likely why Defendants made no effort to address it substantively. As explained above in Section II.E, these supplements contain nearly 60 pages of detail explaining how certain of PioneerRx's trade secrets were incorporated in, used by, or disclosed by the DRX software including, point of sale prompts, patient profile functionality, print queue functionality, and several others. *See, e.g.*, Ex. 28 at 12–62. Defendants' Motions to Compel nevertheless read as if these supplemental responses do not exist.

Likewise, Defendants ignore PioneerRx's summary chart laying out PioneerRx's proposed resolutions. Dkt. 146-1. In response to Defendants' previously filed and withdrawn Motions to Compel, PioneerRx provided this chart to summarize the interrogatories on which Defendants moved to compel and PioneerRx's proposed resolutions. *See id.* Defendants' failure to respond to PioneerRx's proposed resolutions or even acknowledge this summary in their renewed motions— despite having it since July 24, 2023—further demonstrates that their withdraw-and-refile exercise has been a waste of time and judicial resources. *See id.*; Ex. 52.

At bottom, PioneerRx has repeatedly pointed to specific evidence showing that PioneerRx disclosed each of its 151 trade secrets with sufficient particularity. Defendants' motions to compel further responses to Interrogatory Nos. 1–2 should be denied on this basis.

3.                *PioneerRx's Trade Secrets Are Not Generally Known*

In a single paragraph in each of their 45-plus page briefs, Defendants re-assert their previously-raised argument that PioneerRx failed to "identify what information is known to the trade and which is not" and did not "separate PioneerRx's alleged trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." Dkt. 182 at 19–20. In doing so, Defendants vaguely cite PioneerRx's interrogatory responses without any explanation as to why PioneerRx allegedly failed to show its trade secrets are non-public. These arguments fail.

*First*, PioneerRx has provided substantial evidence that its trade secrets are not publicly known, including with reference to its Systems Agreements. *See* Exs. 1, 2 (Defendants acknowledge PioneerRx is "the sole owner of the Software," which is "proprietary" to PioneerRx); Ex. 36, ¶¶ 15–16 ("PioneerRx procedures and policies are geared towards ensuring that [its trade secrets] are not disclosed to the public."); Ex. 14. These Systems Agreements also show the reasonable measures PioneerRx took to maintain its software as confidential. Ex. 36, ¶¶ 11, 14–16. For example, Danwins and Spencerport both agreed to "not permit any other person or entity to copy . . . recreate . . . any embodiment of the Software." Ex. 14 at 2, 14. They also agreed that customers are not permitted to use PioneerRx's software for any purpose other than "normal business operations." *Id.*

PioneerRx further explained its great efforts to protect its trade secrets from public disclosure, including by restricting access to its software to authorized users with valid credentials. *See* Ex. 37 at 17–21; Ex. 36, ¶¶ 10–11, 14–16. PioneerRx also adopted various other measures to protect its confidential information, including security access cards, computer and server passwords, server and data access control protocols, non-compete and non-solicitation agreements with high-level employees, terminating third-party access to confidential information after a business relationship ends, and physical security measures such as RFID tags and security cameras. Ex. 37 at 21. All of the functionality described above in Section III.B.2 (as well as the functionality of the remaining 147 trade secrets Defendants failed to address at all) is found in PioneerRx's

pharmacy management software, which is protected by these measures. And PioneerRx has provided undisputed, sworn testimony that its trade secret "information is safeguarded to ensure it is not generally known by the public and especially PioneerRx's competitors." Ex. 36, ¶ 9. Defendants provide absolutely no evidence to the contrary, despite being specifically asked for evidence of public availability in discovery. Ex. 38 at 3–4 (No. 2).

**Second**, PioneerRx has served an Interrogatory on Defendants asking Defendants to explain their contention that "PioneerRx's Trade Secrets are 'readily ascertainable by proper means,' are 'matters of general knowledge in the trade or of special knowledge to those Persons skilled in the trade,' 'cannot be the subject of a trade secret claim,' would be 'obvious to any pharmacist and any other Person with general knowledge of the trade,' 'are common to all pharmacy software programs,' and 'cannot, as a matter of law, constitute a trade secret.'" *Id.* at 3. PioneerRx further asked Defendants to explain their contention that "any similarities between the software of DRX and the software of PioneerRx, if any, involve matters of general knowledge, matters easily derived from public information" *Id.* at 5. Defendants have provided no substantive response. PioneerRx is willing to supplement its response to Interrogatory Nos. 1 and 2 to address any information Defendants provide when and if they respond to PioneerRx's interrogatories.

For the above reasons, PioneerRx pointed to specific evidence showing that: (1) the 151 trade secrets were not publicly known, in light of PioneerRx's strict procedures to keep its confidential information secret and (2) methods underlying the 151 trade secrets were not publicly known. Defendants' argument to the contrary should be disregarded.[7]

### C.    PioneerRx's Trade Secrets Are Appropriately Designated as "OUTSIDE COUNSEL EYES ONLY"

Defendants further argue PioneerRx should be compelled to de-designate its Trade Secret List from "Outside Counsel Eyes Only" to "Confidential" to allow Defendants to review the list.

---

[7] Defendants' cursory argument that PioneerRx failed to show "novel[ty]" or "unique[ness]" (Dkt. 182 at 14, 22) finds no support in the law. Courts do not require that a plaintiff show the "uniqueness" of its trade secrets. *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F. Supp. 2d 935, 960 (S.D. Tex. 2013) ("Novelty and uniqueness are not prerequisites for a trade secret.").

Dkt. 182 at 22–23. As a preliminary matter, it remains unclear what exact relief Defendants seek. On the one hand, Defendants demand that PioneerRx "reduce its classification" of the Trade Secret List from "Outside Counsel Eyes Only" to "Confidential" so that Defendants can see the list. *See id*. On the other hand, Defendants appear to argue that, rather than reduce the designation of its existing list, PioneerRx should "produce a general description" of the Trade Secret List that can be marked "Confidential" (as opposed to "Outside Counsel Eyes Only"). *Id.* at 24. Defendants have made no attempt to clarify these conflicting demands despite PioneerRx previously raising this issue in response to the now-terminated Motions to Compel.

Regardless, there should be no material disputes in view of the Protective Order entered in this case—an order which ***all parties*** jointly moved to enter. Dkt. 51-1. Under the agreed-upon Protective Order, the Court already provided a mechanism for Defendants to access PioneerRx's materials designated "Outside Counsel Eyes Only." Specifically, Mr. Safee (or Mr. Schladebeck) can seek access to materials marked "Outside Counsel Eyes Only" by certifying that they previously viewed such material pursuant to former agreements while a customer of PioneerRx. *See* Dkt. 51-1 at 13–14. Defendants now demand that Mr. Safee—who is actively misappropriating PioneerRx's trade secrets—and Mr. Schladebeck be given access to these materials, but they have refused to follow the Court-ordered process, which is bizarre given that this is a process to which all Defendants agreed and given Defendants' apparent position that "nothing about the broad and general descriptions contained in Exhibit A of Doc. 78-7 (including the User Manuals) are unknown to Defendants" and that "[n]o actual trade secret information is disclosed." Dkt. 182 at 22. If these are truly Defendants' contentions, then Mr. Safee and/or Mr. Schladebeck should have no problem certifying that they previously saw the PioneerRx Manuals designated "Outside Counsel Eyes Only." They have not done so.

### D.    PioneerRx May Assert All of Its Trade Secrets

Defendants further argue that PioneerRx should reduce the number of trade secrets asserted against Defendants, which is effectively a request that the Court grant summary judgment on untold number of trade secrets before PioneerRx gets any meaningful discovery. Dkt. 182 at 23–

24. Not only is this demand irrelevant to the question of whether PioneerRx has adequately described its trade secrets, it is not supported by law.[8] In fact, courts routinely allow plaintiffs in trade secret misappropriation cases to assert hundreds of trade secrets. *See, e.g.*, *EMC Corp. v. OrangePoint, LLC*, No. 11-2643, 2012 WL 13019524, at *4 (D. Kan. July 31, 2012) (approving "contention that 111 documents constitute trade secrets"); *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2012 WL 74319, at *16, *18 (N.D. Ill. Jan. 10, 2012) (finding identification of "a large number of items," including more than 375,000 files to be sufficient); *TianRui Grp. Co. Ltd. v. Int'l Trade Comm'n*, 661 F.3d 1322, 1325, 1328 n.1 (Fed. Cir. 2011) (finding 128 trade secrets misappropriated at trial).

To be clear, PioneerRx will consider whether it is feasible to streamline its trade secret list at an appropriate time, but PioneerRx cannot do so until Defendants make a good faith effort to engage in discovery that might allow PioneerRx to more precisely determine how Defendants misappropriated the trade secrets. To date, Defendants have produced zero emails or ESI materials, have refused to supplement several critical interrogatories, and have produced nothing since February 2022. Defendants' request that the Court order PioneerRx to narrow its case before receiving any meaningful discovery from Defendants is unreasonable. *See SmithKline Beecham Pharms. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447–48 (Del. 2000) (allowing plaintiff to provide 37-page trade secret identification with the intention of later narrowing list "following discovery").

Defendants imply that a case asserting 151 trade secrets would be unmanageable, rhetorically asking "[h]ow long does a trial of 151 Trade Secrets take?" Dkt. 182 at 23–24. PioneerRx answered that question already (*see, e.g.*, Dkt. 145 at 14–15)—Defendants apparently did not read it before submitting a carbon-copy of their previously withdrawn Motion, so PioneerRx will do so again. PioneerRx's undersigned counsel recently represented a plaintiff in a

---

[8] Defendants only cited one case where the number of trade secrets was not at issue. *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. CV 20-2970, 2021 WL 6332246, at *6, *24 (E.D. La. May 28, 2021) (determining asserted trade secrets did not constitute trade secrets, despite being identified with particularity, because the plaintiff "failed to take reasonable measures to maintain the secrecy of those outward-facing features" and were known to those skilled in the industry).

trade secret misappropriation case involving 104 trade secrets. *See Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 CIV. 211 (LGS), 2021 WL 1553926, at *5 (S.D.N.Y. Apr. 20, 2021), *aff'd in part, vacated in part, remanded sub nom. Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, No. 21-1370, 2023 WL 3636674 (2d Cir. May 25, 2023). In *Syntel*, the 104 trade secrets were "group[ed] . . . into three categories as software, guides and manuals, and tools." *Id.* at *5. The trade secret counter-plaintiff could easily "link[] the asserted trade secret to particular documents or source code alleged to be trade secrets" to show the jury. *Id.* Indeed, the matter was resolved in a six-day jury trial and the "jury ultimately returned a verdict finding that [counter-plaintiff] 'possessed one or more trade secrets' that [counter-defendant] misappropriated." *Id*. A case involving 151 trade secrets is eminently manageable.

### E.    PioneerRx Has Sufficiently Responded to Defendants' Other Interrogatories

Defendants' motions are largely the same with respect to the arguments regarding PioneerRx's responses to Interrogatories. The Motions should be denied, at least because: (1) PioneerRx's objections are proper should not be stricken; (2) PioneerRx sufficiently responded to interrogatories seeking the identification of people who assisted in responding to the interrogatories; (3) PioneerRx sufficiently responded to interrogatories seeking information supporting its responses to Interrogatory Nos. 1 and 2; (4) PioneerRx sufficiently responded to interrogatories seeking information regarding the confidential information accessed and stolen by Defendants; (5) PioneerRx sufficiently responded to interrogatories seeking information regarding breaches of the System Agreement; and (6) PioneerRx sufficiently responded to interrogatories seeking information regarding Defendants' improper access of PioneerRx's confidential information. Additionally, DRX moves on several interrogatories regarding damages and investigation issues. As explained below, all of Defendants' arguments are incorrect.

#### 1.    *Defendants' Criticisms Regarding "Individuals with the Most Knowledge" Are Unfounded*

Defendants request an identification of individuals with the most knowledge about Danwins' Interrogatory Nos. 7–13, 15; Spencerport's Interrogatory Nos. 6–9, 11, 13–14, 16; and

DRX's Interrogatory Nos. 5–7, 9, 11, 12. Before Defendants filed their motion, PioneerRx supplemented its responses to each of these interrogatories to expressly identify this information, including by identifying Dan Safee, Eric Schladebeck, and the other individuals who assisted with DRX software development as having the most knowledge regarding Defendants' actions. *See, e.g.*, Ex. 39 at 33; Ex. 42 at 16–17; Ex. 48 at 27; These identifications moots any issues relating to identifying individuals with the most knowledge regarding Defendants' interrogatories.

### 2.    *Defendants' Criticisms Regarding Objections Are Unfounded*

With respect to Interrogatory Nos. 3–16, Defendants argue that "this Court should strike all of PioneerRx's belated objections." *See, e.g.*, Dkt. 182 at 25; *see also id.* at 25–48. Defendants provide no authority or basis for striking any of PioneerRx's proper objections as "belated" or "untimely." *See id.* As explained above in Sections II and III.A, PioneerRx's objections contained in its July 24, 2023 supplemental responses (which were drawn from PioneerRx's original responses specifically to address Defendants' purported concerns regarding general objections) were timely served and not improper. Defendants' request to strike PioneerRx's objections is unfounded and should be denied.[9]

### 3.    *PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Individuals Who Provided Assistance in Responding*

**Interrogatory No. 4** asks PioneerRx to identify the individuals that assisted in answering the interrogatories and on which interrogatories each individual assisted. Ex. 13 at 7. PioneerRx did so. Ex. 39 at 7. Although Danwins concedes PioneerRx's March 21, 2023 response identifies individuals who helped respond to the interrogatories, Danwins argues that the response does not specify which individuals helped answer which interrogatory. But Danwins' previously filed and terminated motion to compel was the first time it raised this issue. Had Danwins raised this issue in a meet and confer, it could have avoided raising this issue to the Court, because the explanation

---

[9] Indeed, with respect to Interrogatory Nos. 3, 5, 14, and 16, Danwins' only argument is regarding PioneerRx's objections. But Danwins indicated it found PioneerRx's responses to these interrogatories "to be sufficient." Dkt. 182 at 25, 27, 45, 48. It is unclear what issue Danwins has with these responses and objections given that it found PioneerRx's responses sufficient.

is simple: the information requested is found in PioneerRx's response to Interrogatory No. 3. *See Id.* at 2–4. PioneerRx noted this in its Oppositions to Defendants' now-withdrawn Motions.

Nevertheless, to moot the issue, on July 24, 2023, PioneerRx supplemented its response to Interrogatory No. 4 to explain that "[a]s explained in PioneerRx's previous response [*i.e.*, to Interrogatory No. 3], PioneerRx prepared these answers with the assistance of Paul Carrig, Josh Howland, Jenny Roe, Mitchell Archer, and Will Tuft, whose relevant knowledge is described in PioneerRx's response to Interrogatory No. 3. Additionally, PioneerRx relied on its counsel, including attorneys for Kirkland & Ellis LLP, to provide assistance in preparing these answers." *Id.* at 9. Defendants' argument that PioneerRx "provided no substantive new information" is incorrect—as PioneerRx's responses to Interrogatory Nos. 3 and 4 make clear, all identified individuals provided collective assistance in responding to all the interrogatories.

Spencerport's arguments regarding **Spencerport's Interrogatory No. 4** (Dkt. 184 at 25–26) and DRX's arguments regarding **DRX's Interrogatory No. 4** (Dkt. 186 at 25–26) are substantively identical and fail for the same reasons described above.

    4.    *PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Documents Supporting Its Responses to Interrogatory Nos. 1 and 2*

**Danwins' Interrogatory No. 7** requests that PioneerRx identify all documents supporting its response to Interrogatory No. 1 and the harm and/or damages caused to PioneerRx. Danwins argues that PioneerRx's response is insufficient because it (1) responds "*in globo*" when "Danwins requested this information for *each* Trade Secret" and (2) "does not identify the harm and/or damages caused by Danwins for *each* trade secret it alleges was misappropriated." Dkt. 182 at 31. All of these arguments fail.

As an initial matter, PioneerRx's response is detailed and identifies numerous documents that support its trade secret misappropriation claim. *See* Ex. 39 at 27–30. For example, PioneerRx identified a "log reflecting Dan Safee's unauthorized access to PioneerRx." *Id.* at 28 (citing Ex. 17). Indeed, the "DSafee login created . . . by Eric Schladebeck" referenced in this document clearly shows misappropriation for each of PioneerRx's identified trade secrets. As another

example, the 151 trade secrets identified on the Trade Secrets list are found in PioneerRx's User Manuals—accordingly, those manuals support PioneerRx's response to this interrogatory and are properly cited. *See id.* Moreover, PioneerRx's Trade Secret List (included in response to Interrogatory No. 1) specifically identifies where, in each manual, each trade secret can be found and is also properly cited.

Defendants complain that PioneerRx referenced "*in globo* 2,669 pages of produced documents" with purportedly no explanation about which documents apply to which trade secrets. Dkt. 182 at 31. This is disingenuous at best. PioneerRx's response to Interrogatory No. 1 identifies precisely where PioneerRx's trade secrets can be found, such that Defendants cannot credibly feign that they do not know how to link the trade secrets at issue to specific pages within the cited documents. Further, Interrogatory No. 7 is worded with an "or" clause and demands that PioneerRx identify "each and every Document that supports your response to Interrogatory No. 1." Thus, PioneerRx appropriately re-cited all of the information more specifically set forth in Interrogatory No. 1. Defendants appear to be attempting to rewrite this interrogatory into one that asks for documents for each trade secret, but even if the Federal Rules allowed them to do so (they do not) PioneerRx has already supplied this information.

*Second*, despite admitting that PioneerRx "spends a full four paragraphs" in its response "discussing alleged damages," Defendants argue that PioneerRx has not adequately tied these damages to each trade secret. Dkt. 182 at 31. But as PioneerRx explained, its lost profits and customers are attributable to all misappropriated trade secrets. Ex. 39 at 29–30. Defendants offer no authority that PioneerRx must assign a specific value to each trade secret—indeed, this is not the law. *See e.g.*, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370, 2018 WL 1611835, at *6 (N.D. Cal. Apr. 3, 2018) ("[Expert's] opinion is not excludable based on arguments of lack of [trade secret] apportionment."), *02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1076 (N.D. Cal. 2005) (same), *Comet Techs. USA Inc. v. XP Power LLC*, No. 20-CV-06408, 2022 WL 2442810, at *5 (N.D. Cal. Mar. 2, 2022) (declining to exclude expert testimony apportioning damages based on trade secret ***groupings***, not by individual trade secrets),

*LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-CV-01268, 2019 WL 3254226, at *4 (N.D. Cal. July 19, 2019) (declining to exclude expert testimony that "each line of code contribute[d] equally to the software's overall value"). Further, PioneerRx need only provide damages "based on the information [it] has to date" and "of course" can later amend and provide expert opinions. *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997). Defendants have not turned over a single document showing how they promoted and/or utilized PioneerRx's trade secrets. PioneerRx will provide more specifics on damages after Defendants produce documents relevant to this issue.

Spencerport's arguments regarding **Spencerport's Interrogatory No. 7** (Dkt. 184 at 29–32) and DRX's arguments regarding **DRX's Interrogatory No. 6** (Dkt. 186 at 30) are substantively identical and fail for the same reasons described above.

**Danwins' Interrogatory No. 8** asks PioneerRx (analogously to Interrogatory No. 7) to identify all documents supporting its response to Interrogatory No. 2 and the harm and/or damages caused to PioneerRx. Danwins' only substantive argument regarding this Interrogatory is that PioneerRx's responses to Interrogatory Nos. 2 and 6 are inadequate, as PioneerRx's response referred to those other responses. Ex. 39 at 33–34; Dkt. 182 at 32–34. As explained above with respect to Interrogatory Nos. 2 and 7 and below with respect to Interrogatory No. 6, Defendants' challenge to PioneerRx's responses to those Interrogatories fails. In fact, PioneerRx supplemented its response to this interrogatory to incorporate by reference its response to Interrogatory No. 7. Ex. 39 at 36. For the same reasons, PioneerRx will provide more specifics on damages after Defendants produce documents relevant to this issue.

Spencerport's arguments regarding **Spencerport's Interrogatory No. 8** (Dkt. 184 at 32–33) and DRX's arguments regarding **DRX's Interrogatory No. 7** (Dkt 186 at 31–32) are nearly identical and fail for the same reasons described above.

> 5. *PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Confidential Information Accessed and Stolen by Defendants*

**Danwins' Interrogatory No. 6** requests the confidential and proprietary information

accessed by Dan Safee and how that information was copied, reverse engineered, and/or recreated by Mr. Safee. Ex. 13 at 16. PioneerRx provided a detailed summary and identification of documents—with the information available to PioneerRx at the time—showing the information Mr. Safee accessed and how he accessed it. Ex. 39 at 20–25. PioneerRx will supplement further once Defendants make a meaningful document production that enables PioneerRx to assess the full extent of Defendants' misappropriation, and likewise to account for third-party document productions.

Here, Danwins asserts PioneerRx's response is insufficient because it allegedly does not identify (1) "which confidential and proprietary information was accessed by Dan Safee" and (2) "how that confidential and proprietary information was copied, reverse engineered, and/or recreated by Dan Safee." Dkt. 182 at 27.

*First*, regarding which confidential and proprietary information was accessed by Dan Safee—all of PioneerRx's trade secrets (as laid out in its Trade Secret List) were accessed by Dan Safee. Mr. Safee used PioneerRx's software for more than five years (under an agreement to keep it confidential), and continued viewing the PioneerRx software without authorization after termination of Danwins' agreement with PioneerRx. *See* Dkt. 1, ¶¶ 27, 37; Ex. 1; Ex. 14. Indeed, PioneerRx's response clearly indicates Mr. Safee viewed "PioneerRx's software": "For years, Dan Safee, who owns Danwins and founded DRX, accessed and studied PioneerRx's software for purposes of copying, recreating, and/or reverse engineering it. Mr. Safee's access to PioneerRx's software was continuous and used for improper purposes." Ex. 39 at 22.

*Second*, regarding Danwins' insistence that PioneerRx identify "how" PioneerRx's confidential trade secrets were improperly used, the answer to this question again depends on information in possession of Danwins that it refuses to provide, including the development materials showing how Mr. Safee created the DRX software and the roles of the other developers. *See* Dkt. 71-1. Danwins cannot have it both ways—it cannot insist that PioneerRx explain in detail "how" Danwins misappropriated its trade secrets while refuse to turn over evidence of its misappropriation. Thus, the Court should compel *Danwins* to produce emails pursuant to the ESI

order, source code, and other outstanding discovery requests. Upon receipt of this evidence, PioneerRx will voluntarily supplement its response to this interrogatory to incorporate such information—no order is required.

**Danwins' Interrogatory No. 9** asks PioneerRx to identify all of PioneerRx's confidential information and trade secrets that Danwins had access to and explain how Danwins abused its access, exceeded the scope of its permissible access, engaged in an illicit scheme to steal that information and use it for improper purposes. In response, PioneerRx incorporated by reference its responses to other Interrogatories, including Nos. 1, 2, and 7, which (as explained above) provide detailed explanations of how Defendants (including Danwins) engaged in an illicit scheme to provide unauthorized and improper access to Mr. Safee and how Mr. Safee and DRX built a copycat system. Ex. 39 at 37–38.

Danwins asserts PioneerRx's response is insufficient because it does not explain in detail (1) every "trade secret to which PioneerRx contends Danwins had access," (2) "*how* Danwins abused its access," and (3) "who had knowledge that supports the contention that Danwins had access to and abused that access." Dkt. 182 at 35–36. All are untrue.

*First*, PioneerRx's responses explain its contention that Danwins "had access to" all of the trade secrets identified in the Trade Secret List. Accordingly, PioneerRx incorporated its response to Interrogatory No. 1 by reference, which fully identified each and every item of PioneerRx's confidential information and trade secrets to which Danwins had access. Ex. 39. This fully resolved the issue Danwins raised in its motion and its counsel makes no credible assertion to the contrary.

*Second*, with respect to "how" Danwins abused its access, exceeded the scope of its permissible access, and engaged in an illicit scheme to use PioneerRx's information for improper purposes, PioneerRx's response explains its contention that, although Danwins had legitimate access (pursuant to strict contractual controls), Danwins abused such access (and exceeded the scope of its permissible access and engaged in an illicit scheme) at least by allowing Mr. Safee and DRX to utilize such access to build a copycat system. Ex. 39 at 13–17. For example, PioneerRx provides further details by referring to its response to Interrogatory No. 5 (incorporated by

reference):

> For years, Dan Safee, who owns Danwins and founded DRX, accessed and studied PioneerRx's software for purposes of copying, recreating, and/or reverse engineering it. Mr. Safee's access to PioneerRx's software was continuous and used for improper purposes, like discerning confidential details regarding the operation, strategies, methodology, and data structures underlying PioneerRx's software. Continued access to this information allowed Mr. Safee to create a competing pharmacy software system, since PioneerRx's information is not immediately discernable without studying and/or continually using PioneerRx's software. Dan Safee continued to use PioneerRx's confidential information to replicate PioneerRx's proprietary pharmacy management software.

*Id.* at 12. This is precisely the information Danwins claims PioneerRx should provide and there is nothing to compel from PioneerRx at this time. Discovery is ongoing and PioneerRx will continue to supplement its responses, including as it gets information from Defendants in discovery.

**Danwins' Interrogatory No. 15** asks PioneerRx to identify each item of confidential information that PioneerRx believes was improperly obtained from PioneerRx by Danwins to create the DRX software, and each report that PioneerRx contends was impermissibly generated by Dan Safee. Ex. 39 at 60–63. PioneerRx's response incorporates by reference its responses to Interrogatory Nos. 1–7 and identifies details from the Complaint, both of which sufficiently identify the confidential information misappropriated by Defendants. *Id.*

Danwins argues that PioneerRx did not provide sufficient detail regarding these items (Dkt. 182 at 47), but PioneerRx explained in its response that all 151 items previously identified on its Trade Secret List are the pieces of confidential information improperly obtained from PioneerRx to create the DRX software. Ex. 39 at 10–18. For this reason, PioneerRx incorporated by reference its response to Interrogatory No. 1 by reference. *See* Ex. 39 at 60–61.

Moreover, Danwins argues that PioneerRx failed to identify documents that support its contentions and failed to identify persons most knowledgeable in supporting those contentions. This is incorrect. In addition to referring to its response to Interrogatory Nos. 1 and 2, PioneerRx's response to this interrogatory explicitly stated:

> PioneerRx incorporates by reference its Supplemental Response to Interrogatory Nos. 3, 5, 6, and 7 as set forth herein, which provide further information on the nature of that theft and misappropriation, including supporting documentation and

37

persons knowledgeable about PioneerRx's confidential trade secrets.

*Id.* at 61. This is precisely what Danwins seeks and there is nothing to compel at this time. PioneerRx will continue to supplement its responses to reflect additional information it discovers surrounding Defendants' misappropriation, including as PioneerRx gets information from Defendants.

**Spencerport's Interrogatory No. 9** asks PioneerRx to identify confidential information to which Spencerport had access, how Spencerport abused its access, and all documents supporting its contentions.

Spencerport argues PioneerRx has not provided any details regarding the confidential information to which Spencerport had access or how it abused its permissible access. Dkt. 184 at 34–35. But Spencerport admits that PioneerRx incorporates its responses to Interrogatory Nos. 1–7 and 9 by reference. *Id.* These responses provide a detailed explanation of the confidential information PioneerRx contends Spencerport had access to. For instance, PioneerRx's supplemental answer to Interrogatory No. 9 "incorporates in full its Supplemental Response to Spencerport's Interrogatory Nos. 5, 6[,] and 7, which provide a detailed overview of Spencerport's role in DRX's trade secret misappropriation." Ex. 48 at 32. As PioneerRx's response to Interrogatory No. 5 explains, "[i]n at least September 2020, Eric Schladebeck created a user account for Dan Safee, permitting Dan Safee to access PioneerRx's pharmacy management software." *Id.* at 12; *see also id.* at 16–19, 22–24 (providing further information regarding Eric Schladebeck's impermissible creation of a PioneerRx account for Dan Safee). As this response makes clear, the confidential information to which Spencerport had access was PioneerRx's software and the use for an improper purpose included at least creating a login for Mr. Safee. PioneerRx will supplement its response to this Interrogatory as discovery progresses and Defendants produce documents.

**Spencerport's Interrogatory No. 16** asks PioneerRx to identify confidential information improperly obtained from PioneerRx by Spencerport and used by DRX to create its competing

pharmacy software, including the identity of each document and individuals with knowledge supporting these contentions.

Spencerport complains that "PioneerRx simply does not answer the questions propounded to it in this Interrogatory." Dkt. 184 at 44. This is incorrect. PioneerRx has answered to the fullest extent it can at this point, given that Defendants have refused to participate in discovery. PioneerRx has propounded requests for production on Spencerport seeking information related to this interrogatory, but Spencerport refuses to provide it. *See, e.g.*, Ex. 41 at 13, No. 15 (requesting "All Documents, Things, and Communications referring to, Relating To, or constituting Your receipt, consideration, or use of information provided by or obtained from PioneerRx (either directly or through another source)"); *see also id.*, Nos. 13–14. Further information responsive to this interrogatory, including with respect to confidential information improperly obtained from PioneerRx by Spencerport and used by DRX to create its competing pharmacy software, is in the possession of Spencerport— which is refusing to engage in discovery. The Court should compel Spencerport to respond and produce this material and PioneerRx will supplement its response to this Interrogatory thereafter.

**<u>DRX's Interrogatory No. 5</u>** asks PioneerRx to identify and explain the factual and legal bases for PioneerRx's contention that Defendants engaged in an illicit scheme to violate the Systems Agreements, steal PioneerRx's confidential information, and misappropriate PioneerRx's trade secrets. DRX argues that the "case is obviously baseless" and merely "show a narrative that points to normal consumers using a product in a normal way and then moving to a different product." Dkt. 186 at 27–28. This is an egregious oversimplification of PioneerRx's response to this interrogatory. For example, PioneerRx explained that Mr. Safee—who owns and controls both Danwins and DRX—accessed and studied PioneerRx's software for the improper purpose of creating a competing pharmacy software system using PioneerRx confidential information as a reference tool. Ex. 42 at 11–12. Additionally, PioneerRx explained that Danwins and DRX (through Mr. Safee) then engaged with Spencerport in the same illicit scheme, as Mr. Schladebeck aided Mr. Safee in providing improper access to PioneerRx's confidential information. *Id.* at 12–

13. PioneerRx then explained that DRX used this improperly obtained information to create a competing software platform. *Id.* at 14. Further information responsive to this interrogatory, including with respect to the Defendants' illicit scheme, is in the possession of DRX—which is refusing to engage in discovery. As such, PioneerRx will supplement its response to this Interrogatory as discovery progresses and Defendants produce documents.

**DRX's Interrogatory No. 9** asks PioneerRx to identify confidential information that was improperly obtained from PioneerRx by DRX and used by DRX to create its competing pharmacy software. DRX argues PioneerRx has not provided any details regarding the confidential information DRX stole from PioneerRx to create the DRX software. Dkt. 186 at 34. But DRX admits that PioneerRx incorporates its responses to Interrogatory Nos. 1–3, and 5 by reference. *Id.* These responses provide a detailed explanation of the confidential information PioneerRx contends DRX stole. For instance, with respect to Interrogatory Nos. 1 and 2, PioneerRx explained that DRX along with the other defendants misappropriated PioneerRx's 151 identified trade secrets (which all also comprise confidential information), and engaged in an illicit scheme to steal the trade secrets and use them for an improper purpose. *See* Ex. 30 at 2–4. And with respect to Interrogatory No. 5, PioneerRx provided further details regarding this misappropriation, including with reference to several documents (including call logs and emails) supporting PioneerRx's contentions. Ex. 42 at 10–14; Ex. 34; Ex. 43.

Additionally, beyond the substantial material found in its other responses incorporated by reference, PioneerRx provided nearly three pages of supplemental responses with details regarding the confidential information stolen by DRX, including with reference to PioneerRx's software and databases (including "the operation, methodology, strategies, and data structures underlying the PioneerRx Software"). *See id.* at 34.

Further information responsive to this interrogatory is in the possession of DRX—which is refusing to engage in discovery. As discovery progresses and Defendants produce documents, including in accordance with PioneerRx's Motion to Compel (Dkt. 71), PioneerRx will supplement its response to this Interrogatory.

6.    *PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Breaches of the Systems Agreement*

**Danwins' Interrogatory No. 10** asks PioneerRx to identify each provision in the Systems Agreement it believes Danwins breached. Ex. 39 at 41. Danwins argues that PioneerRx's response "fails to identify individually and separately [sic] each and every provision in the Systems Agreement that it contends was breached by Danwins" and provide supporting documents. Dkt. 182 at 37–38. That is not true. PioneerRx's response lists nine examples of provisions that Danwins breached. Ex. 39 at 11–12, 41. Further, PioneerRx is willing to supplement its responses to this interrogatory after receiving relevant discovery from Danwins—including source code, communications, development materials, and other outstanding documents described in PioneerRx's Motion to Compel (Dkt. 71)—including to the extent such discovery shows additional instances Danwins breached PioneerRx's Systems Agreement.

**Spencerport's Interrogatory No. 5** asks PioneerRx to provide all facts supporting PioneerRx's contention that Spencerport breached the Systems Agreement, and PioneerRx's resulting damages.

Spencerport complains that "PioneerRx does not include any damages it alleges it sustained from the alleged breach of the Systems Agreement." Dkt. 184 at 27. But PioneerRx's response explains exactly how Spencerport enabled Dan Safee to create a competing software platform using PioneerRx's trade secrets. *See* Ex. 48 at 10–13. For example, PioneerRx explained how Spencerport granted Dan Safee unauthorized access to the PioneerRx software, including by creating a user account for Dan Safee and communicating with Mr. Safee regarding the same. *Id.* at 12–13. PioneerRx's response to Interrogatory No. 7 provided further details on PioneerRx's damages caused by Spencerport's actions constituting breach of the Systems Agreement, including with reference to its lost profits and customers. *See id.*, No. 7. PioneerRx's supplemental response explicitly incorporates Interrogatory No. 7 into Interrogatory No. 5. *Id.* at 15. There is nothing further to compel from PioneerRx. Rather, Spencerport must respond in discovery so that this case can move forward, and the Court should grant ***PioneerRx's*** Motion to Compel (Dkt. 71).

> 7.    *PioneerRx Has Sufficiently Responded to Defendants' Interrogatories Regarding Improper Access of PioneerRx's Software*

**Danwins' Interrogatory No. 11** asks PioneerRx to identify each time Dan Safee accessed PioneerRx's software for improper purposes, including by identifying the trade secret information accessed. Ex. 39 at 27–28. PioneerRx has pointed to logs showing Mr. Safee's unauthorized access to PioneerRx (and similar activities), and by explaining that, every time Mr. Safee accessed the PioneerRx software, he would have been able to learn or further his understanding of PioneerRx's trade secrets (notwithstanding the fact that Danwins has not provided discovery that would show all the instances when Mr. Safee has done so). *Id.* at 28; Ex. 34, Ex. 43.

Danwins asserts PioneerRx's response is insufficient because "PioneerRx has to show more than legitimate access to its software . . . [and] identify[] particular incidents of improper access." Dkt. 182 at 39. According to Danwins, Mr. Safee had no improper purpose in inquiring about the functionality of PioneerRx's software. Although this may be Danwins' contention, PioneerRx is not required to accept this contention in responding to Danwins' interrogatories—especially where Danwins refuses to provide development materials that would show whether, after inquiring about the workings of PioneerRx's software, Mr. Safee thereafter developed similar functionality in his copycat program. Indeed, the third-party discovery PioneerRx obtained (and which Danwins and DRX already had and withheld) shows explicitly that DRX was instructed to make its program function "like they do in PioneerRx." Ex. 27. As PioneerRx explained in its response, PioneerRx does not specifically log when a customer has accessed its software, which is information Danwins must provide. Ex. 39 at 45. Further, PioneerRx is willing to supplement its responses to this interrogatory after receiving relevant discovery from Danwins—including source code, communications, development materials, and other documents described in PioneerRx's motion to compel.

Spencerport's arguments regarding **Spencerport's Interrogatory No. 11** (Dkt. 184 at 36–398) are substantively identical and fail for the same reasons described above.

**Danwins' Interrogatory No. 12** asks PioneerRx to identify each time Dan Safee contacted PioneerRx's customer service in order to obtain details about the workings of PioneerRx's

software that he could not immediately discern. Ex. 39 at 49. PioneerRx has shown this by pointing to call logs showing communications between Mr. Safee and PioneerRx. *Id.* at 49–50; Exs. 34, 43.

Danwins asserts PioneerRx's response is insufficient because it does not (1) "state what contact Dan Safee had with PioneerRx customer service that obtained details about the workings of PioneerRx Software," (2) "provide exact dates and times" for these contacts, (3) explain in detail the "trade secret information obtained by Dan Safee" nor the "employee who disclosed such confidential information." Dkt. 182 at 41–43. All are false. For example, the documents referenced in PioneerRx's response contain "Satisfaction Notes" stating that "[Safee] says that he loves the fact that Pioneer pushes out regular updates and he's not left in the dark about new features." Ex. 39 at 49–50 (citing Ex. 45). These Satisfaction Notes disclose the date, time, and employee making the comment. *See* Ex. 45 ("10/16/2014 9:03 Alisa Gandy").

Moreover, similar to Interrogatory No. 11, Danwins insists that these inquiries were not for an improper purpose, but here again Danwins has refused to provide discovery on this topic, including what purpose Mr. Safee had when calling PioneerRx customer support, whether he developed competing features or functionalities after making such calls, and what emails and development documents were generated by Danwins after each of these calls. PioneerRx is seeking access to DRX's software logs and the various versions of DRX's source code in order to develop evidence showing how and when Mr. Safee imported PioneerRx's features into his software, but Defendants refuse to produce this information. PioneerRx is willing to supplement its responses to this interrogatory after receiving relevant discovery from Danwins. The Court should order Danwins to do so, as requested in PioneerRx's Motion to Compel. Dkt. 71.

**Danwins' Interrogatory No. 13** asks PioneerRx to identify each report that was impermissibly generated by Dan Safee. Ex. 39 at 53. PioneerRx pointed to PIONEERRX0002669, a spreadsheet summarizing search reports generated by either Mr. Safee or Mr. Schladebeck. *Id.*

Danwins asserts PioneerRx's response "does not identify *individually* and *separately* each and every report that PioneerRx contends was impermissibly generated by Dan Safee" and that PIONEERRX0002669 "has no substantive information on it." Dkt. 182 at 44. Not true.

PIONEERRX0002669 indicates that either "DSafee" or "Eric Schladebeck" (who apparently created a login called "DSafee") conducted several searches yielding reports containing tens of thousands of records. Ex. 17; Ex. 39 at 53. This is precisely the information Danwins claimed to want PioneerRx to provide, but PioneerRx has already done so. Further, PioneerRx is willing to supplement its responses to this interrogatory within 30 days after receiving relevant discovery from Danwins including to the extent such discovery shows additional reports impermissibly generated by Dan Safee from PioneerRx's software.

Spencerport's arguments regarding **Spencerport's Interrogatory No. 13** (Dkt. 184 at 39–41) with respect to Mr. Schladebeck are nearly identical and fail for the same reasons described above.

**Spencerport's Interrogatory No. 6** asks PioneerRx to identify and explain in detail the factual and legal bases for its contention that DRX and Spencerport conspired to obtain detailed reports about the functioning and architecture of PioneerRx's software systems. Spencerport complains that "PioneerRx spends multiple pages making nothing more than conclusory allegations, but points to no facts that actually support its conclusions in response to this interrogatory." Dkt. 184 at 28–29.

This is incorrect. PioneerRx's response explains in detail how DRX and Spencerport conspired to steal PioneerRx's trade secrets. For example, PioneerRx provides specific details regarding Dan Safee calling PioneerRx customer service, Eric Schladebeck creating a log-in for Dan Safee, Dan Safee generating reports, and Eric Schladebeck denying knowing Dan Safee (even after creating the "DSafee" login). *See* Ex. 48 at 16–19. Additionally, further information responsive to this interrogatory is in the possession of Spencerport, which is refusing to engage in discovery. PioneerRx has already agreed that it will further respond when Spencerport cooperates in discovery.

**Spencerport's Interrogatory No. 14** asks PioneerRx to identify each time Eric Schladebeck accessed PioneerRx's software for improper purposes, including by identifying the trade secret information accessed.

Spencerport complains that (1) PioneerRx does not "identify when Eric Schladebeck accessed PioneerRx's software or computer interface for an improper purpose," (2) Spencerport could access this information because it "belongs" to Spencerport, (3) PioneerRx "fails to identify these reports with particularity," (4) PioneerRx's claims that Eric Schladebeck stated he did not know Dan Safee is nonresponsive. Dkt. 184 at 41–43. But PioneerRx's response addressed each of these concerns:

*First*, PioneerRx provided a detailed explanation of how Eric Schladebeck accessed PioneerRx's software for an improper purpose. For example, Eric Schladebeck violated the Systems Agreement by creating a login for Dan Safee, which Dan Safee used to impermissibly generate reports from a Spencerport machine. *See* Ex. 48 at 51–52.

*Second*, regarding Spencerport's argument that it merely accessed information "belong[ing]" to it, PioneerRx explained that Spencerport could only use PioneerRx's software and confidential information in accordance with its systems/confidentiality agreements, and that Spencerport's use of PioneerRx's software and confidential information to enable a competing system constituted a breach of those agreements. *Id.*

*Third*, PioneerRx did particularly identify reports. *Id.* For example, PioneerRx identified PIONEERRX0002669 which shows a "DSafee login created on 2020-09-11 10:38:07 by Eric Schladebeck," "[l]ogin activity for DSafee login," and further identified a "[s]ummary of search actions ran by DSafee login. . . . Each of these search actions can be saved to excel for data extraction," and cited directly to PIONEERRX0002669. *Id.* at 52 (citing Ex. 17). Additionally, further information responsive to this interrogatory, including with respect to reports generated by Spencerport or Dan Safee/Danwins/DRX, is in the possession of Spencerport—which is refusing to engage in discovery. Upon receipt of this information, PioneerRx will supplement its response.

*Fourth*, PioneerRx's response notes Eric Schladebeck's denial of knowing Dan Safee (which is responsive) including because this denial shows Defendants' efforts to conceal their activities. Ex, 49 at 52. Eric Schladebeck clearly knew Mr. Safee since Mr. Schladebeck created a PioneerRx login for Mr. Safee. This false denial demonstrates that Mr. Schladebeck understood

that creating a login and allowing Dan Safee to copy PioneerRx's trade secrets violated Spencerport's Systems Agreement and was thus improper.

At this point, until Spencerport (and Defendants generally) participate meaningfully in discovery, there is nothing further to compel. As PioneerRx has stated repeatedly, it will update its responses when Defendants cooperate in discovery, agree to PioneerRx's proposed ESI protocol, and provide emails and other requested information. The Court should compel Spencerport and the other Defendants to do so, as requested in PioneerRx's motion. *See* Dkt. 71.

        8.    *PioneerRx Has Sufficiently Responded to DRX's Remaining Interrogatories*

**DRX's Interrogatory No. 11** asks PioneerRx to identify the commercial advantage obtained by DRX by using PioneerRx's confidential information.

DRX asserts that PioneerRx does not (1) "address[] the issue of commerical advantage" by incorporating its response to Interrogatory No. 5, (2) "explain [the commercial advantage] in any detail," and (3) "identify any reports or documents." Dkt. 186 at 36. But this is demonstrably wrong. PioneerRx's response explained that "DRX used PioneerRx's trade secrets and confidential information to obtain a commercial advantage over PioneerRx's and at PioneerRx's expense," including that PioneerRx believes that DRX obtained a commercial advantage from each trade secret it misappropriated from PioneerRx, including "sav[ing] time and money on research and development," "pric[ing] its competing product at a price lower than PioneerRx Pharmacy Software," "secur[ing] contracts with customers that would have otherwise contracted with PioneerRx." *See* Ex. 42 at 43–46. The response also and incorporates PioneerRx's supplemental response to Interrogatory No. 5, which provided specific details regarding PioneerRx's trade secrets stolen by DRX and how they were used to create its competing software. *Id.* at 10–14. Moreover, in PioneerRx's response to Interrogatory No. 11, PioneerRx also incorporated its supplemental response to Interogatory No. 6 which explains in detail PioneerRx's damages (including lost profits and customers), and DRX's unjust enrichment (including ill-gotten profits and saved R&D costs). *Id.* at 17–20. As this response makes clear, PioneerRx's position is that the

above damages, unjust enrichment, and misappropriated trade secrets are all commercial advantages obtained by DRX.

Further, PioneerRx's response lists documents like DRX's monthly software fee (DRX 00001), which is another commercial advantage. Given that Defendants refuse to participate in discovery, further supplementation is not warranted until PioneerRx receives responsive information from Defendants.

**DRX's Interrogatory No. 12** asks PioneerRx to identify all portions of its software which was made a part of DRX's pharmacy software. DRX complains that PioneerRx "lists a few similar features between PioneerRx software and DRX software . . . [that] do not identify which parts of the software were 'reverse engineered,' but instead point out normal similarities." Dkt. 186 at 39–40. This is simply incorrect. PioneerRx's response incorporated specific portions of the Complaint and its responses to Interrogatory Nos. 1 and 2 which provide a detailed list of PioneerRx's trade secrets and numerous examples comparing the DRX software to the PioneerRx software. *See* Ex. 30. PioneerRx's position is that all these trade secrets were stolen by DRX and incorporated into the DRX pharmacy software. And PioneerRx disagrees with DRX's contention that these are "normal similarities" between programs. But DRX's disagreements with the substance of PioneerRx's position is not a basis for the Court to compel a response that DRX prefers. In fact, DRX's concession that there are "similarities" between the competing products is itself evidence of misappropriation. DRX has zero evidence that those similarities arose by coincidence, including because Mr. Safee and DRX have produced no evidence showing how they came up with the functionality in their system, other than by leveraging what they learned from PioneerRx.

DRX's motion also fails to address PioneerRx's August 22, 2023 supplemental responses to Interrogatory Nos. 1 and 2, which provide numerous additional examples of confidential and trade secret features of PioneerRx's software that were improperly made part of the DRX software. Ex. 30 at 7–62; *see supra*, § II.E.

Accordingly, PioneerRx has responded to this interrogatory to the extent it is able to do so. PioneerRx agrees it will supplement its responses to these interrogatories after receiving relevant

discovery from Defendants, including source code, development materials, email communications, and other outstanding documents described in PioneerRx's motion to compel.

**DRX's Interrogatory No. 13** requests that PioneerRx identify all customers it claims to have lost and damages attributable to each lost customer. DRX admits that "PioneerRx does give a list of customers it claims to have lost as a result of Danwins' and/or DRX's unfair methods of competition and unfair or deceptive trade acts or practices," but complains that PioneerRx does not "identify[] for each customer PioneerRx's lost profits and/or other damages." Dkt. 186 at 41. But as PioneerRx has explained, this request is premature, especially in light of Defendants' refusal to participate in discovery, including discovery about the profits DRX itself has made from their purloined customers, which would be an input into PioneerRx's response.

In particular, PioneerRx's Interrogatory No. 13 asks Defendants to "identify the total sales volume," "the monthly sales," "revenue that DRX has received," and the "projected sales" and "revenues" from the sale of the DRX software—including a specification of "the dates of such sales, the quantity sold to each purchaser, and the price." Ex. 38 at 8. DRX purported to respond to this interrogatory by reference to DRX00866 (Ex. 50) and a "Profit and Loss statement for DRX for 2022" (Ex. 51) which DRX did not produce. However, these spreadsheets do not contain the details requested by PioneerRx's Interrogatory No. 13—they only contain broad categories of income and expenses, and do not indicate monthly sales, projected sales, total sales volume, sales dates, and projections of sales of the DRX software. *See* Exs. 50, 51. Nor do these spreadsheets identify the sales to or revenue from each of DRX's purchasers. *See id.* Upon receipt of this information (which PioneerRx has sought in its motion to compel), PioneerRx will supplement its response. Morever, PioneerRx's damages expert will provide further details regarding its damages during expert discovery.

**DRX's Interrogatory No. 14** requests that PioneerRx identify any investigation, analysis, and/or forensics conducted regarding its complaint. DRX complains that PioneerRx provides "a completely nonresponsive answer." Dkt. 186 at 42. But PioneerRx's response is clear: PioneerRx specifically objected on the grounds of attorney-client privilege and attorney work-product

privilege. All pre-suit investigation was conducted by PioneerRx's attorneys and is protected by attorney-client and work-product privilege. There are no non-privileged investigations, analyses, and/or forensics conducted responsive to this interrogatory.

**DRX's Interrogatory No. 15** requests the idenficiation of each product, technology, and/or service sold by PioneerRx.

DRX complains that PioneerRx "does not state its product code or any internal product nomenclature." Dkt. 186 at 43. But as Defendants admit, "PioneerRx does name its software ['PioneerRx Pharmacy Software'] in response to this interrogatory." *Id.* Further, PioneerRx's response provides an example of "version 2.2.43583.50301" deployed "on March 1, 2023," explaining "the suffix .50301 indicates a March 1 build date." Ex. 42 at 60. This response indicates the product codes and internal product nomenclature of the PioneerRx Pharmacy Software, precisely as DRX requested. Accordingly, PioneerRx has responded to this interrogatory to the extent able.

**DRX's Interrogatory No. 16** requests sales information for PioneerRx's software. On July 2, 2023 PioneerRx indicated that it "will supplement its response to this interrogatory to provide sales information and expects that DRX will do the same." Ex. 4 at 14. On July 12, 2023, PioneerRx renewed this offer and attached the July 2 letter in a communication to DRX. Ex. 5 at 1. DRX did not address this offer and never identified any issues that remain outstanding, thus rendering this issue moot. As PioneerRx has agreed to provide this information, PioneerRx respectfully requests that the court order DRX to likewise provide this same sales information, as requested by PioneerRx's motion to compel.

### F.    PioneerRx Has Sufficiently Responded to Defendants' Requests for Production

Defendants make the same argument as in its previously filed and terminated motion—namely, by summarily stating without explanation that PioneerRx's responses to RFPs "included many incomplete responses and many improper objections." Dkt. 182 at 49. Defendants' RFP requests should be denied on this ground alone. *See Hsieh*, 2021 WL 3502467, at *7 ("Plaintiff's

Motions to Compel . . . fail to comply with Local Rule 37, which requires Plaintiff to 'quote verbatim each interrogatory, request for production and request for admission to which the motion is addressed, followed immediately by the verbatim response or objection.'"). As explained above, Defendants have not explained why they believe PioneerRx's document productions are incomplete nor which objections they believe are improper. Accordingly, it is not clear what material issue remains with respect to PioneerRx's responses. Discovery is ongoing and PioneerRx is diligently working to collect and produce additional responsive, discoverable documents—Defendants have not identified anything for the Court to order PioneerRx to do that PioneerRx is not already doing.

Moreover, PioneerRx seeks an ESI protocol that promotes transparency and the timely exchange of ESI and emails. *See* Dkt. 89 at 2. Under this proposal, the parties would disclose all document systems within their possession (email systems, cloud systems storing relevant data, other computer systems), run search terms within a specific timeframe, and report on the results. Although Danwins opposes this process, its need is clear, given Defendants' failure to voluntarily provide accurate and complete information in response to PioneerRx's discovery requests. For example, Danwins insisted that Dan Safee developed the DRX software "without the assistance of anyone else" or PioneerRx's software, but third-party emails show that numerous others were involved, and were told to make DRX's software function "like they do in PioneerRx." Ex. 27. Defendants have also failed to turn over many other highly relevant (and incriminating) documents in their position, which PioneerRx only learned about and obtained via third party discovery. There are no doubt many more, but Defendants refuse to provide them. An ESI order is needed here, to ensure that other responsive, highly relevant emails and ESI are turned over. PioneerRx is willing to supplement its document production under such a protocol—but both parties should participate.

### G. Defendants' Motions Should Be Denied Because They Failed to Meet and Confer or Raise These Issues With PioneerRx Prior to Filing Their Motions

"Rule 37 of the Federal Rules of Civil Procedure mandates that a movant's motion to compel 'include a certification that the movant has in good faith conferred or attempted to confer

with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.' Fed. R. Civ. P. 37(a)(1)." *Thibodeaux v. Myers*, No. 1:20-CV-01630, 2022 WL 4086809, at \*4 (W.D. La. Sept. 6, 2022). A "[f]ailure to comply with the meet and confer requirement may constitute sufficient reason to deny a motion to compel." *Id.* "[T]he meet and confer requirement 'is not an empty formality' and 'cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue[.]'" *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. CIV.A. 12-257-JJB, 2014 WL 4373197, at \*3 (M.D. La. Sept. 3, 2014) ("Due to Zurich's failure to attach a Rule 37 certification to its motion as is specifically required by the Rule, as well as its failure to meet and confer with all opposing counsel subject to the motion, the Motion to Compel is DENIED.").

PioneerRx tried, unsuccessfully, on multiple occasions to get Defendants to (1) identify purported issues (if any) with PioneerRx's supplemental discovery responses, and (2) to meet and confer on those issues. PioneerRx reached out multiple times (before Defendants' previous motions and before Defendants' instant motions) to try to narrow and resolve any issues—including on June 19 (Ex. 2), June 28 (Ex. 3), July 12 (Ex. 5), July 28 (Ex. 19), August 4 (*id.*), August 11 (*id.*), August 21 (*id.*), August 22 (*id.*), August 25 (*id.*), and August 30 (Ex. 46)—to no avail. This is not meeting and conferring in good faith. It is not meeting and conferring at all. Instead, Defendants ignored both PioneerRx and their obligations under the Federal Rules of Civil Procedure and this Court's Local Rules to attempt to resolve discovery disputes before bringing them to the Court. Defendants' renewed motions should be denied on this basis.

## IV.    CONCLUSION

For the foregoing reasons, PioneerRx respectfully requests that the Court deny Danwins' motion to compel, including Danwins' motions to strike portions of PioneerRx's responses to interrogatories.

Dated: October 6, 2023

*/s/ Scott L. Zimmer*
Scott L. Zimmer (La. Bar. No. 26151)
KEAN MILLER LLP
333 Texas Street Suite 450
Shreveport, LA 71101
Tel: (318) 562-2700
Fax: (318) 562-2751
scott.zimmer@keanmiller.com

James R. Chastain Jr. (La. Bar No. 19518)
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
Tel: (225) 387-0999
Fax: (225) 388-9133
sonny.chastain@keanmiller.com

Megan L. Reinkemeyer (La. Bar No. 32548)
KEAN MILLER LLP
711 Louisiana Street, Suite 1800
Houston, TX 77002
Tel: (713) 844-3000
Fax: (713) 844-3030
megan.reinkemeyer@keanmiller.com

Michael W. De Vries *(pro hac vice)*
Justin Singh (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 S. Flower St.
Los Angeles, CA 90071
Tel: (213) 680-8400
Fax: (213) 680-8500
michael.devries@kirkland.com
justin.singh@kirkland.com

Adam R. Alper *(pro hac vice)*
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Tel: (415) 439-1400
Fax: (415) 439-1500
aalper@kirkland.com

Gianni Cutri *(pro hac vice)*
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
gianni.cutri@kirkland.com

***ATTORNEYS FOR PIONEERRX, LLC***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October, 2023 a copy of the foregoing has been filed electronically with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: October 6, 2023                          _/s/ Scott L. Zimmer_____
                                                                Scott L. Zimmer (La. Bar. No. 26151)